## UNIVERSAL BRUSH CO. v. SONN et al.

(Circuit Court of Appeals, Second Circuit. June 29, 1907.)

No. 195.

1. PATENTS—INFRINGEMENT—METHOD OF MAKING BRUSHES.

The Morrison patent, No. 717,014, for a method of making brushes, which consists in depositing a mass of heated plastic composition, which becomes hard when cooled, within a chambered brush frame having a contracted aperture, and forcing one end of the groups of bristles into the composition when in the plastic state, is not a pioneer, but covers merely an improvement on known methods, and must be limited strictly to the particular advance made. It is not infringed by a construction in which the aperture of the chamber is not contracted, but the sides are

perpendicular to the bottom, but in which the chamber has a raised portion in the center, which assists in holding the composition in place by adhesion and also lightens the brush.

2. SAME—CONSTRUCTION OF CLAIMS.

A patent cannot be given a construction broader than its terms, in order to cover something which might have been claimed, but was not.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 241.]

Appeal from the Circuit Court of the United States for the Northern District of New York.

The decree of the Circuit Court for the Northern District of New York held valid and infringed the first claim of letters patent No. 717,014, granted December 30, 1902, to William Morrison, for a new and useful improvement in making brushes. The opinion below is reported in 146 Fed. 517.

J. P. Bartlett and F. W. Cameron, for appellants.

G. A. Mosher, for appellee.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

COXE, Circuit Judge. The Morrison patent belongs to an old and crowded art. A generic patent in such an art would seem out of the question; at all events we are convinced that we are not now dealing with such a patent.

The principal feature of the invention consists in the method of making brushes, having a chambered frame or back of any desired material, by inserting tufts of bristles into heated, plastic composition deposited in the chamber, which composition when cool holds the bristles firmly in position. The claim in controversy sufficiently describes the invention. It is as follows:

"The herein described method of making brushes which consists in depositing a mass of heated, plastic composition, within a chambered brush-frame having a contracted aperture, forcing one end of a group of exposed bristle-tufts through the aperture and into the composition, and at the same time giving form to the face of the composition by mold-pressure, and supporting the bristles in the desired position projecting from the composition out through the face-aperture, until the composition cools and hardens."

The defenses are lack of novelty and invention and noninfringement. At the date of Morrison's application it was old to hold the bristles in position on brush backs by the use of heated, plastic material, which became hardened when cool. Hicks, in 1867, used cement. In describing a shaving brush made pursuant to his method he says:

"The bristles, f, are bound together in the ordinary manner and are passed into position through the upper opening in the part, d, of the handle and are then cemented in position."

Estabrook, in 1866, received a patent for a brush in which "the bristles inserted through a perforated plate are imbedded and held firmly in a cement of any suitable substance." The Estabrook patent contains the following disclaimer:

"I make no claim to a brush composed simply of bristles and a back made entirely of cement or a molded composition; nor do I claim, for making such brush, the employment of a plate to hold the bristles while being inserted in the composition, or while it may be in the act of being applied to them, such

plate being subsequently to be drawn off the bristles, so as to leave them adhering to the cement or composition back."

In 1878 Estabrook received another patent for improvements in brushes, one of the claims covering a brush "having a wooden back and handle and a composition bristle holder, the material of which fits closely around and covers the ends of the bristles, in virtue of the application, aided by pressure, of said composition to the bristles while in a plastic state."

Morrison, in May, 1895, received a patent which contains a claim for the method of making brushes which consists in "molding a bristles supporting block from plastic material around tufts of bristles in one section of the mold allowing the molded material to harden by cooling, and softening the exposed surfaces of the molded material by heating, and then forcing the softened portion of the bristle-block into an undercut recess in the face of the brush-back."

Indeed, our conclusion, that the claim in question must be confined closely to the method described in the specification and illustrated by the drawings, needs no other support than the statements of the patent itself.

The patentee clearly recognizes the prior use of plastic material as a holder for supporting the bristles in position and expressly points out that his improvement upon the method "commonly practiced" consists in forcing the bristle ends directly into the heated composition first deposited into the chambered frame instead of forming a partial bristle supporting pad before inserting the bristles through the face-aperture. In other words, he saves time by omitting one step in the process as formerly applied. Another asserted advantage is stated in the specification as follows:

"By so doing I am able to determine exactly the proper quantity of composition to fill the chamber in the brush head, without having any excess to be forced out of such chamber when the bristles are inserted therein."

He reached precisely the same result theretofore attained by himself and other brush makers, but he did it by using the chamber in the brush face as a matrix to receive the plastic material—thus saving time and, presumably, money. This simplifying of the process may have involved an exercise of the inventive faculties, but surely does not entitle its author to rank as a pioneer. Such improvements are a part of the evolution and natural development of every art. An inventor of such an improvement must be confined strictly to the particular advance which he has made and cannot levy tribute on the improvements of others.

It will be noted that the first step in the method of the claim is the depositing of "a mass of heated, plastic composition within a chambered brush-frame having a contracted aperture." If the words "contracted aperture" be construed to mean an opening of less diameter than that of the chamber into which it opens, it is conceded that the defendants do not have that feature of the claim. Their brushes are made pursuant to letters patent, issued July 17, 1900—prior to the grant of the Morrison patent in suit—and another patent issued June 6, 1905. Their brush back does not have a chamber with a contracted opening,

in the sense stated above, but one whose walls are perpendicular and at right angles to the bottom of the chamber. There is no undercut or expansion of the part below the opening as shown in the drawings of the patent in suit. The central portion of the defendants' brush back, marked "B" in their patent and called an "island" in the testimony, is slightly raised above the bottom of the chamber and helps to lighten the brush and hold the composition in place.

We have no doubt as to the meaning of the claim read in the light of the description and drawings. It means precisely what it says—a brush-frame within a chamber therein having an aperture smaller in size than the size of the chamber into which it opens. The words "contracted aperture" mean smaller opening, an opening smaller than the chamber, an opening caused by drawing in, abridging, bringing within narrower compass, the walls of the chamber at that point. Any other construction, in our judgment, does violence to the English language.

We are not impressed with the suggestion that the patentee had in mind some structure of the prior art having a flaring chamber and intended to limit his claim to a chamber less extensive. Such a rule of interpretation would revolutionize patent law. We must construe the patent in the light of what it says, not what it might have said; we must hold the patentee to what he has put on paper, not what he may have had in his mind. If there were any doubt at all regarding the meaning of the words "contracted aperture" that doubt is dispelled by an examination of the specifications, where a chamber with a contracted aperture is clearly described and shown and the reasons therefor pointed out.

The patent describes a brush having a metal frame, but the specification says that the frame may be made of any desired material in any known way. The defendants' brush back is of wood which, it is said, does not require an aperture so contracted as does metal, but however this may be it is obvious that in order to hold an alleged infringer it is necessary to show that he has, irrespective of the material he may use, adopted the method of the claim. Should some one discover, for instance, a material for a brush back which would so co-act with the plastic material that the latter would firmly adhere without the necessity for a recess of any kind, it would probably not be contended that a method of manufacture, which dispensed with the chambered frame altogether, infringed the claim in issue. In short, if for any reason the defendants are enabled to dispense with one of the elements of the claim, or, to speak more accurately, with one step of the process, they cannot be held as infringers. That they dispense with the chamber having a contracted aperture we see no reason to doubt. It is argued that this limitation was necessary and may be disregarded or omitted altogether.

We are asked to reconstruct the claim by substituting the word "face" for the word "contracted" and adding to the claim the following:

"Said face aperture being sufficiently narrow or contracted to retain said composition."

Whether such a claim, if originally inserted in a patent describing a metal brush back, would disclose invention and an operative method

of construction we are not called upon to decide; it is enough that the patentee did not so word the claim and it is beyond the province of the court to rewrite it. In Keystone Bridge Co. v. Phœnix Iron Co., 95 U. S. 274, 24 L. Ed. 344, Mr. Justice Bradley, at page 278 of 95 U. S., page 346 of 24 L. Ed., says:

"They [the patentees] cannot expect the courts to wade through the history of the art, and spell out what they might have claimed, but have not claimed. * * * But the courts have no right to enlarge a patent beyond the scope of its claim as allowed by the Patent Office. * * * As patents are procured ex parte, the public is not bound by them, but the patentees are. And the latter cannot show that their invention is broader than the terms of their claim, or, if broader, they must be held to have surrendered the surplus to the public."

See, also, cases cited in National Bunching Co. v. Williams, 44 Fed. 190, 194, 12 L. R. A. 107.

We understand that the judge of the Circuit Court places the same construction upon the claim that we do. He regards the depositing of the heated, plastic material in a chambered brush frame having a contracted aperture as a necessary step in the method of the patent and concludes that there is no infringement unless the raised central portion, or "island," of the defendants' brush back is the equivalent for the "contracted aperture" of the claim. Believing that the patent is for a fundamental invention and entitled to a wide range of equivalents he concluded that the defendants, although they omitted the "contracted aperture" in their method, employed an equivalent in the raised central portion of their brush back.

As before stated we regard the patent as one for an improvement upon known methods of construction and entitled to a limited range of equivalents only. The brush head of defendants adheres to the back, but the method of accomplishing this result as shown and claimed in the patent is wholly absent.

The decree is reversed.

TOWNSEND, Circuit Judge, heard the argument, participated in the consultation, and voted to reverse.