### SIEBER & TRUSSELL MFG. CO. v. SAUGERTIES MFG. CO.

(Circuit Court, S. D. New York. February 11, 1908.)

#### No. 9,339.

PATENTS—INFRINGEMENT—TEMPORARY BINDER.

> The Trussell patent, No. 743,114, for a temporary binder for holding loose sheets of paper, is an improvement patent for a combination of old elements in a crowded art, and, in view of the prior art and the limitations imposed by the action of the Patent Office and acquiesced in, is limited substantially to the means shown and described. As so construed, it is not infringed by the device of the Phœnix patent, No. 782,986, which covers a different combination of old elements to accomplish the same result.

In Equity. Suit to enjoin alleged infringement of United States letters patent No. 743,114, of November 3, 1903, application filed September 22, 1902, to Sieber & Trussell, assignee of Emory A. Trussell, for a temporary binder.

Joseph A. Stetson (Louis K. Gillson, of counsel), for complainant. Chester A. Weed, for defendant.

RAY, District Judge. The patentee, Trussell, says that his "invention relates to that class of temporary binders used for holding loose sheets of paper, and embodies means whereby the sheet-receiving prongs are actuated to move them together or separate them so as to confine the sheets or permit their removal. The construction provides for the actuation of a series of two or more pairs of sheet-holding prongs simultaneously by the operation of a single part." After describing the construction and operation of the device he further says:

> "It will be seen that by the construction embodied in my invention I am able with the greatest ease to manipulate the sheet-receiving prongs into either open or closed condition, and simultaneously throughout the binder when either two or a greater number of pairs of mating prongs are made use of. It will also be seen that the prongs are held firmly in either open or closed condition at all times by reason of either the closing or opening cams being in engagement therewith, according to the position into which the slide that carries the cams has been moved."

This device belongs to an old and a crowded art as is readily seen by reference to the numerous patents in evidence. It is also a simple device, and easily understood. Each and every element of the combination is old in the art and in analogous arts. The covers and back of the binder need not be considered as they do not differ, materially, from the covers, united by a back, of any ordinary book. In fact, the patentee says, "These parts may be of any desirable construction such as usual in temporary binders." It is with the binder proper that we have to do.

This device consists of a back plate, 3, attached to the inside face of the back uniting the covers, called "binder-back 2." This is a flat piece of metal, it might be of wood, and it might be bent up on the edges, of substantially the same length as the back of the covers. This plate carries, attached thereto, a longitudinal rib, 4, of the same length as the plate, and this rib is preferably formed by a fold at the center of the plate. This rib is hollow and contains a pivot rod, 5, seated in this hollow—"pocket in the rib" the patentee calls it. As shown and described this pivot rod extends from end to end of the rib. We then have "the archsheet-receiving prongs, 6." These are mounted in pairs on said pivot rod. Each pair when so mounted and closed form a circle, not exactly, but substantially. Each prong is provided with "a heel, 7," which heel projects to the far side—that is, beyond the pivot rod—and is but a continuation of the circular prong. This end of the prong is flattened and perforated, at a little distance therefrom, so that when the pair is mounted on the pivot rod by running it through these perforations these heels lie side by side with the part of the prong on the other side of the pivot rod. The prongs of each pair are so formed at the point of mounting that the free ends when brought together meet. These heels furnish lever arms against which pressure may be brought to bear by suitable means for the purpose of moving the prongs to open them. When the pair of prongs is open to receive leaves these heels lie in substantially the same plane, the heel of the right hand prong projecting to the left of the pivot rod and the heel of the left hand prong projecting to its right. But when the pair of prongs is closed at the free ends thereof each heel projects downward thus furnishing the lever arm against which pressure may be brought to bear for the purpose of opening the pair of prongs. The pair of prongs is closed by pressure on each prong at another point. The arrangement is such that when pressure is applied to close the pair the pressure on these heels or lever arms is released. The free end of one of each pair of prongs is provided with a point, and the free end of the opposite prong has a socket or opening which receives this point when the pair is closed. This serves to keep the free ends together. On this pivot rod we may have one, two, or a dozen pairs of prongs. Two or three are sufficient for all practical purposes. The claims of the patent call for two sets of pairs specifically. The device may be light and small for small covers and leaves, or heavy and large for larger covers and leaves.

We now come to the means provided and described for opening and closing these pairs of prongs by one movement of the operator. Each and every pair is to open at the same instant and in the same manner.

Each right-hand prong is to open or turn back to the right and each left-hand prong is to open or turn back to the left. Before setting out the claims we will point out the means provided and the mode of actuating or moving the pairs of prongs. We have "a slide," 10, seated longitudinally on the rib, 4, of the back plate, 3, and adapted "to ride," move back and forth, thereon. This slide of metal, or it might be of wood, has side flanges, 11. Projecting upward from said flanges, and adjacent to the said prongs are "cams or lips," 12, which are so adapted as to be moved with the slide just mentioned longitudinally of the rib, 4, which rib carries or contains the pivot rod, 5, on which is mounted the pairs of prongs. These cams or lips on the outside edge of the flange of the slide, 10, are designed to exert pressure against the lower under sides of the prongs and to close them. The slide is cut away at the locations of the prongs so as to permit its limited longitudinal movement. It is evident that, if the slide is pushed or moved so as to bring these so-called cams or lips under the lower under sides, "rear faces," of the prongs, the prongs will be moved on the pivot, and the free ends of the prongs brought together, provided there is no obstruction. Now, it is necessary to provide means for bringing pressure to bear on the "heels" of the prongs so as to open them after being closed. Hence, on the inside edges of the flanges, 11, of slide, 10, and within the cut-away portion of such slide, we have attached to such slide cams or lips, 13, which, when brought, by the movement of the slide, underneath the "heels" and pressed against them, causes them to rise, the prongs turning on the pivot, and this throws the free ends of the prongs outwardly and causes them to open. But, as it would not do to have the cams or lips designed to close the prongs pressing the prongs to close them at the same time the cams or lips designed to open the prongs are pressing the "heels" or levers of the prongs to open them, they are so arranged with reference to each other on the flanges of the slide that the one set of lips backs away and releases its pressure as the other set moves forward and engages and causes pressure. It is perfectly obvious that, as each pair of prongs is constructed and mounted on the pivot rod in precisely the same way, if each pair is engaged, operated on in precisely the same way, by the same means, at the same instant of time, the movement of each pair, and of each prong of each pair, will be precisely the same, and that the movement of each pair and of each prong will occur at the same instant of time, precisely. As the movable slide extends from end to end of the plate, and rib and pivot rod, which remain stationary, and carries the cams or lips, and as the pivoted and mounted pairs of prongs also remain stationary, except as each prong moves or turns on its pivot, to open and close, it is also obvious that the movement of the slide, caused by pushing or pulling on either end thereof will engage "all of said prongs in multiple to move their free ends toward and away from each other simultaneously" accordingly as we move the slide the one way or the other. It is also obvious that we have "means for actuating all of said prongs in unison to move their free ends toward and away from each other simultaneously" accordingly as we move the slide the one way or the other. Also, that we have "a slide for engaging all of said prongs in unison to move their free ends towards and away from each

other, simultaneously" accordingly as we move the slide. Also, that we have "a slide and cams carried by said slide to bear against all of said prongs in unison to move their free ends toward and away from each other simultaneously" accordingly as we move such slide. Also, that we have "a slide and cams carried by said slide to bear against the rear faces of all of said prongs in unison to move their free ends toward and away from each other simultaneously" accordingly as we move the slide the one way or the other. Also, that we have "means for engaging said heels to move the sheet receiving ends of said prongs away from each other, and means for moving the sheet-receiving ends of said prongs toward each other." The claims of the patent in issue here read as follows:

"1. In a temporary binder, the combination of a fixed pivot member, two sets of pairs of sheet-holding prongs swingingly mounted on said fixed member, and means for engaging all of said prongs in multiple to move their free ends toward and away from each other simultaneously, substantially as set forth.

"2. In a temporary binder, the combination of a fixed pivot member, two sets of pairs of mating sheet-holding prongs swingingly mounted on said fixed pivot member, and means for actuating all of said prongs in unison to move their free ends toward and away from each other simultaneously, substantially as set forth.

"3. In a temporary binder, the combination of a fixed pivot member, two sets of pairs of mating sheet-receiving prongs swingingly mounted on said fixed pivot member, and a slide for engaging all of said prongs in unison to move their free ends toward and away from each other, simultaneously, substantially as set forth.

"4. In a temporary binder, the combination of a fixed pivot member, two sets of pairs of mating sheet-receiving prongs swingingly mounted on said fixed pivot member, a slide and cams carried by said slide to bear against all of said prongs in unison to move their free ends toward and away from each other simultaneously, substantially as set forth.

"5. In a temporary binder, the combination of a fixed pivot member, two sets of pairs of mating sheet-receiving prongs swingingly mounted on said fixed pivot member, a slide, and cams carried by said slide to bear against the rear faces of all of said prongs in unison to move their free ends toward and away from each other simultaneously, substantially as set forth.

"6. In a temporary binder, the combination of a fixed pivot member, mating sheet-receiving prongs mounted on said pivot member, heels carried by said prongs and projecting beyond said pivot member, means for engaging said heels to move the sheet-receiving ends of said prongs away from each other, and means for moving the sheet-receiving ends of said prongs toward each other, substantially as set forth."

There is not a new element in either combination. The application for the patent had a hard time in the Patent Office. The claims were repeatedly amended and changed and revised and limited. We have no pioneer invention if we have any invention. The complainant must be limited to what is described and claimed, and the claims must be construed in view of the prior art and the self-imposed limitations growing out of the action of the Patent Office. There is no room for any considerable range of equivalents. With the art narrowed as it was all comers into the field at this time were mere improvers, and as such each is entitled to his specific improvement as described and claimed, and to no more. Computing Scale Co. v. Automatic Scale Co., 204 U. S. 609, 617, 621, 27 Sup. Ct. 307, 51 L. Ed. 645; Cimiotti U. Co.

v. American Fur Refining Co., 198 U. S. 399, 406, 410, 25 Sup. Ct. 697, 49 L. Ed. 1100.

Before considering further the character and validity of the patent in suit, we will consider the alleged infringing device, as this, too, has the sanction of U. S. letters patent, viz.: U. S. letters patent to Fred Phœnix for Loose-Leaf Attachment, No. 782,986, dated February 21, 1905, application filed November 3, 1903. It will be noticed that Phœnix filed his application on the same day that the Trussell patent in suit was issued. As there is no proof or pretense that Phœnix ever saw the Trussell patent prior to its issue, there is no presumption he had any knowledge of it. However, if he was working on the same lines, and made the same invention or improvement on the prior art as did Trussell, assuming Trussell discloses invention, then, of course, he was anticipated and was not the first inventor. It is conceded that defendant's device, alleged to infringe, is made in strict accordance with the Phœnix patent, and protected by it if that patent is valid. Each patent has the presumption of validity to start with. It is presumed that the Patent Office found a patentable difference.

The claims of the Phœnix patent read as follows:

"1. An article of manufacture comprising an element bent upon itself to form a back-piece having two walls, a movable member mounted between said walls and provided with a plurality of cam-slots, located in pairs, and a plurality of leaf-holding devices provided with projections adapted to fit in said slots, said devices being opened and closed by the longitudinal movement of said movable member.

"2. An article of manufacture comprising a back-piece which is bent upon itself to form two walls, a movable member located between said walls and adapted for longitudinal movement with relation thereto and provided with a plurality of cam-slots located in pairs which for a certain distance are parallel, and a plurality of leaf-holding devices provided with projections which pass into said cam-slots and which are opened and closed by the movement of said movable member, the said parallel portions of said slots causing a positive locking of the leaf-holding devices when closed.

"3. An article of manufacture comprising a member bent upon itself to form walls, a plate fitted between said walls and provided with pairs of cam-slots, the slots of each pair being for a certain distance parallel and also converging, a plurality of leaf-holding devices mounted in slots in said member and having studs adapted to take in said cam-slots whereby upon movement of the plate a simultaneous movement of the devices takes place to either open or close the same, said parallel portions causing a positive locking of the devices when in closed position."

Resolving claim 1 into its elements, we have an article of manufacture comprising (1) a back-piece formed by bending a suitable element upon itself and having two walls, we will say, an upper and a lower wall; (2) a movable member mounted between said walls and provided with a plurality of cam-slots located in pairs; (3) a plurality of leaf-holding devices provided with projections adapted to fit in said cam-slots, and which leaf-holding devices are opened and closed by the longitudinal movement of said cam-slotted movable member.

Resolving claim 2 into its elements we have (1) the same back-piece; (2) the same cam-slotted movable member in the same location, but with the limitation that the cam-slots "for a certain distance are parallel"; and (3) a plurality of leaf-holding devices provided with projections, which projections pass into said cam-slots and which leaf-hold-

ing devices are opened and closed by the movement of said cam-slotted movable member, and the said parallel portions of said slots causing a positive locking of the leaf-holding devices when closed.

In claim 3 we find (1) the same back-piece; (2) the same cam-slotted movable member as in claim 2 in the same location, but the cam-slots, arranged in pairs and for a certain distance parallel, are also converging; and (3) a plurality of leaf-holding devices mounted in slots in said movable member and having studs (projections) adapted to take in said cam-slots, whereby, upon movement of the slotted plate—movable member—a simultaneous movement of the devices takes place to either open or close the same; said parallel portions causing a positive locking of the devices when in closed position.

Comparing the claims and elements of claims of the two patents, we find: (a) That each device has a back-piece, but that the back-piece of the Phœnix patent is bent upon itself so as to form two walls with an open space between while the back-piece of the Trussell patent is a single flat piece carrying the hollow longitudinal rib, 4. It can be plausibly contended that the one is the obvious equivalent of the other. For some purposes and to some extent this is true. (b) That each device has a movable member. (c) That each device has a plurality of leaf-holding devices—prongs. (d) That in each device the leaf-holding devices are provided with projections, "heels" in Trussell and "projections" or "studs" in Phœnix. (e) That in each the longitudinal movement of the movable member in engagement causes the leaf-holding devices—prongs—to open and close as desired, and that this movement of all the leaf-holding devices or prongs is simultaneous, and that they are "engaged in multiple" and "actuated in unison" and "engaged in unison" to move their free ends toward and away from each other simultaneously. That each has "means for engaging said heels"— "projections" and "studs" in Phœnix—"to move the sheet-receiving ends of said prongs"—"leaf-holding devices" in Phœnix—away from each other, and means for moving same toward each other. That this longitudinal movement of the cam-slotted movable member of the Phœnix patent, when in engagement with the projections or slots of the leaf-holding devices, not only opens, but closes the said devices simultaneously, cannot be denied. The result attained is the same as that attained by the longitudinal movement of the movable member in the Trussell patent, but the means employed are materially different. Trussell has no cam-slotted movable member. Trussell has a movable member—"slide"—with flanges, and attached thereto on the outer edges thereof are cams, not cam-slots, but lips (projections), which press directly against the outer side of the prongs themselves to close them, and on the inner edges of said flanges he has cams, or lips, projections upward, which engage and press upward the heels of the prongs or leaf-holding devices. Phœnix has studs extending downward from the lower part of the leaf-holding devices, one from each, and pressure is exerted on these sidewise and inwardly to open the leaf-holding devices, prongs, and sidewise outwardly to close them. There is no pressure on the outer sides, or faces, of the prongs for any purpose; no upward pressure on any heel or lever or projection of the prongs for any pur-

pose. It may be that both had the mental conception that it was a good thing to engage and actuate and open and close these prongs simultaneously and with one movement of the operator, but each went about accomplishing the result in a different way, and each obtained it by different means and by means operating in a different way. Trussell has no patent on his conception, or on the function performed by his combination of old elements. It may be that were Trussell a pioneer he would have covered all means for attaining this result, but as a mere improver he did not—as said, he is limited, substantially, to the means shown and described. Considering the back-pieces, we find that the opening between the two walls of Phœnix carries the movable member, elongated plate provided with the plurality of cam-slots for receiving the projections or studs of the leaf-holding devices, or prongs. The Trussell device carries on its back-piece, and on its upper surface, riding thereon, the movable member provided with cams or lips. The longitudinal hollow rib carried by the back-piece and attached thereto carries the pivot rod seated therein. The only office of the hollow rib is to carry the pivot rod, and the only office of the pivot rod is to hold and carry the prongs. It follows that the office or function of the open space between the two walls of Phœnix is entirely dissimilar from that of the hollow rib of Trussell. They are not equivalents in these devices or combinations in question. True, the back-piece of Trussell carries and supports the movable member and the prongs of his combination. True, the back-piece of Phœnix carries and supports the movable member and leaf-holding device, or prongs, of his combination. But each carries and supports these, elements or members of the combination in different ways, and the elements themselves materially differ in construction and mode of operation. As said, the end to be attained by each is the same, but it is not attained by substantially the same means operating in substantially the same way. Again Phœnix has no pivot rod. He hinges his pair of leaf-holding devices, or prongs, or pivots them but at a different place and in a different manner; in a mode and manner very old in this and analogous arts, and one he had a right to adopt and use without infringing any patent. Phœnix makes no mention in his claims of the mode or manner of hinging or pivoting his leaf-holding devices. Trussell, in each claim, specifically calls for "a fixed pivot member," meaning the "pivot rod, 5, seated in a pocket in the rib," and the two pairs of prongs "swingingly mounted on said fixed pivot member."

Reference to the prior art demonstrates that there was no new conception or thought in seeking to provide for the engagement in multiple and the actuating in unison of said prongs so as to produce the simultaneous movement, or opening and closing, of the prongs or leaf-holding devices. See German patent to Friedrich, May 17, 1889, No. 49,-389; French patent to Kuske, April 15, 1903, No. 331,206; English patent to Lindner, January 1, 1898, No. 9,339; Dunn patent of November 24, 1885, No. 330,967. In this English patent it is said:

"This invention relates chiefly to a paper-file in which the receiving parts of the holders and the closing parts thereof are moved simultaneously and positively away from each other for opening, and toward each other for closing."

The arrangement and construction for doing this were such that, whether we had one or a dozen pairs of prongs, leaf-holding devices, they were engaged, actuated and moved, opened and closed, in multiple, in unison, and simultaneously.  Both Trussell and Phœnix were engaged in providing improved means for attaining this end, for doing something that had been done before, but in a simpler and a better way.  In the Swiss patent, No. 15,443, November 12, 1897, we have duplicate pairs of prongs, but one of each pair is stationary on the back-piece.  These are named "holder pipes."  The other prong of each pair is pivoted or held so it will move on its pivot from left to right, and they are connected by a rod.  Then we have a slotted movable member or slide moving longitudinally on the back-piece which has on its edge oblique slots which engage with the movable prongs. By pulling on the end of this movable member the far side of the slots engage the movable prongs, press against them, and they are engaged in multiple, and actuated in unison, and moved or opened simultaneously.  Push on the end of this movable member and the other sides of the oblique slots engage the other sides of the prongs in multiple, and they are actuated in unison and closed simultaneously.  Now, by mounting the other prongs in the same manner, so as to be movable, and extending and obliquely slotting the movable member opposite the other slots so as to engage the prongs in the same manner, we engage all the prongs in multiple, actuate them in unison, and open and close them simultaneously.  This is such an obvious thing to do, and so simple, that a desire to have all the prongs open and close in the manner described would impel any ordinary mechanic skilled in the art to make the addition and change and accomplish the result.

In the Lindner patent, No. 27,298, this result is accomplished by different means from any to which attention has been invited.  We have a back-piece of single sheet metal with a slotted cross-piece at each end.  The slots are for the accommodation of the sliding or movable member which slides longitudinally on the back-piece.  Midway of the ends this movable member has an elevated slotted projection. Pivoted in the end cross-pieces are two bars each carrying near its ends a prong.  The prongs on these respective bars are opposite each other, so they engage at their free ends when closed.  On its inner edge at a point midway its ends and opposite the slotted projection of the movable member and engaging with it each bar has a downwardly bent or sloping cam or lip.  Pull on the movable member and the lips are raised carrying with them the inner edges of the bars which turn in their respective pivots, and the prongs are opened; reverse the movement, and they are closed by the pivotal action of the bars carrying the prongs or leaf-holding devices.  The two bars would carry any reasonable number of pairs of prongs.  All are engaged in multiple, actuated in unison, and moved simultaneously.

A careful examination of the prior art discloses that Phœnix has borrowed all his elements from the prior art, but has made a different combination to attain a given result.  This is precisely what Trussell did.  But Phœnix and Trussell did not take the same elements.  Each changed the form of some of the elements taken, appropriated by him. Their combinations differ, and are easily and widely differentiated.

Phœnix has no cam-slotted movable member. He has no rib carrying a pivot rod seated therein. His prongs are not pivoted to any rod. As improvers in a crowded art each may be entitled to a patent on his improvement in means for accomplishing a given result, a question I will not assume to pass upon as it is unnecessary, for my conclusion is that there is no infringement. Phœnix has succeeded in making a device that does not infringe. The case is very similar to Universal Brush Co. v. Sonn, 154 Fed. 665, 667, 668, 83 C. C. A. 472; and Van Epps v. United Box Board & Paper Co., 143 Fed. 869, 880, 75 C. C. A. 77, 88. In this latter case the court said:

"The defendant, by the elimination or modification of the claimed details of the patented construction, and a readjustment of relative size and location of supporting bars, diaphragms, and flow box, either permissible by reason of the disclosures of the prior art, or not covered by the claims in suit, has succeeded in constructing a noninfringing machine."

It is immaterial that this was done by Phœnix before he knew of the Trussell patent. It is a credit to his skill and integrity that he was not trying to evade a patent, but to invent a new and useful improvement in the art.

There will be a decree dismissing the bill, with costs.