AMERICAN LAUNDRY MACHINERY CO. v. ADAMS LAUNDRY MACHINERY CO.

(District Court, N. D. New York. June 10, 1912.)

PATENTS (§ 328*)—INFRINGEMENT—CLOTHES DRYER.
The Barnes patent, No. 684,776, for a clothes drier, in view of the limitations imposed by the language of the claims as allowed and the prior art, must be confined to a drying-room having heating-coils on its sides only and the central part of the room under the conveyer devoid of efficient heating-coils, and is not infringed where coils furnishing a substantial quantity of heat are placed in the center of the room beneath the conveyer.

In Equity. Suit by the American Laundry Machinery Company against the Adams Laundry Machinery Company for infringement of letters patent No. 684,776, for a clothes drier, issued to William M. Barnes October 22, 1901. On final hearing. Decree for complainant as to one form of drier made by defendant, and for defendant as to a different form.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Church & Rich, of Rochester, N. Y. (Frederick F. Church, of Rochester, N. Y., of counsel), for complainant.

William W. Morrill, of Troy, N. Y. (Walter E. Ward, of Albany, N. Y., of counsel), for defendant.

RAY, District Judge. The validity of the patent in suit, No. 684,-776, to William M. Barnes, for "clothes drier," has been adjudicated in this circuit and is now conceded. American Laundry Machinery Co. v. Troy Laundry Machinery Co. (C. C.) 171 Fed. 878, affirmed by Circuit Court of Appeals, Second Circuit, 174 Fed. 415, 98 C. C. A. 612. Infringement by the device to which attention will be directed is denied. In this case, now on for final hearing, this court considered this patent in some detail on a motion for preliminary injunction. American Laundry Machinery Co. v. Adams Laundry Machinery Co. (C. C.) 161 Fed. R. 556.

I am of the opinion that the six claims in issue of the patent in suit must be narrowly construed in view of the prior art, the action of the Patent Office in rejecting the original claims and the substitution by the applicant of others therefor, or of amendments which materially modified such original claims, and the acquiescence of the patentee in such action by accepting his patent as modified by the amendments.

The claims in issue read as follows:

"1. In combination, a drying-room having heating-coils extending upwardly on the side thereof, a conveyer traversing said room, the central portion of said room beneath the conveyer being devoid of heating-coils, and an air-circulating device in said room, above said conveyer, driving said air downward.

"2. In combination, a driving-room having heating-coils extending upwardly on the side thereof, a conveyer traversing said room, the central portion of said room beneath the conveyer being devoid of heating-coils, and an air-circulating device in said room, substantially central of and above said conveyer, driving said air downward.

"3. In combination, a drying-room having heating-coils extending upwardly on the sides thereof, a conveyer traversing said room, the central portion of said room beneath the conveyer being devoid of heating-coils, and an air-circulating device in said room, above said conveyer, driving said air downward.

"4. In combination, a drying-room having heating-coils extending upwardly on the sides thereof, a conveyer traversing said room, the central portion of said room beneath the conveyer being devoid of heating-coils, and an air-circulating device in said room, substantially central of and above said conveyer, driving said air downward.

"5. The combination, with a drying-room provided with heating-coils on the the sides only of the lower portion of said room, of a conveyer traversing said room above said heating-coils and an air-circulating device in said room, above said conveyer and substantially central of the drying-room; said circulating device driving the air in said room downward.

"6. The combination, with a drying-room provided with heating-coils on the sides only of the lower portion of said room, of a conveyer traversing said room above said heating-coils and at substantially the same level throughout, and an air-circulating device in said room, above said conveyer and substantially central of the drying-room; said circulating device driving the air in said room downward."

Due regard must be had to the words "the central portion of said room beneath the conveyer being devoid of heating-coils," found in

claims 1, 2, 3, and 4, and to the words "with heating-coils on the sides [of the room] only of the lower portion of said room," found in claims 5 and 6, as but for their insertion the claims would not have been allowed—in fact, without them were rejected. Repeatedly in the specifications of the patent stress is laid on the fact that the heating-coils are "on the sides and back of this room," or "at the side of the room," etc. This is an essential feature, and, as the prior art had all the elements of the combination except this feature, a drying-room which does not have it fails to infringe the claims in suit.

The alleged infringing drying-room of the defendant has heating-coils on the sides of the room; but it also has heating-coils in the central part of the room on the floor under the fan and under the conveyer. These central coils (two set) are each 16 inches from the center or median line of the room, which is some 70 inches wide, and about 19 inches from the sides, and seated on the floor. This is conceded by the complainant; but it contends that this placing of coils in the central part is immaterial, and a mere subterfuge to avoid infringement, and that these heating-coils in the central part of the room perform no function of any account, at least, and that the operation of the defendant's drying-room and the result attained is precisely the same without as with them, and, in either case, the same as in complainant's drying-room. Here is the turning and decisive point of this case. If complainant is correct in its contention, infringement is made out; if incorrect, there is no infringement.

The heating-coils of defendant's structure, located in the central part of the drying-room—that is, at the points mentioned—comprise about one-third of the efficient heating-coils of the room. In short, they furnish one-third of the heat and are an essential part of the drying-room. The fan which revolves in the upper central part of this room is so shaped as to drive the heated air, which rises from the coils and absorbs the moisture from the wet garments, downward, and it passes out of the room through an appropriate opening. That hot air rises is well known and conceded. The patent in suit goes on the theory that as the heated air from the coils on the sides of the room rises it is driven downward, except at the sides of the room, by the fan, and into contact with the clothing carried by the carrier, not necessary to be here described, and that the tendency of such current is downward, and that in all parts of the room occupied by the moving carrier a substantially uniform heat is maintained, and that the suspended clothing is not blown upward or sidewise, but rather downward, and that clothing is not loosened from the carrier and dropped on the heated coils on the floor, as was the case in the prior art, where coils were placed on the floor in the central part of the room.

The specifications of the complainant's patent contain the following:

"By the construction described it will be seen that the heating-coils are at the sides of the room and the fan above the conveyer. The air rises from the bottom along the sides, being heated by the heating-coils, and the fan forces it downward through the center to the bottom, from which it again rises, as before described, thus producing a perfect circulation. Any damp air escapes through the opening $a^3$, and fresh air will be admitted through openings $a^1$ and $a^2$."

As I understand the complainant's expert, he concedes that if these coils in the central part of the room alleged to infringe were placed side by side and nearer the center of the room, or laid down on the floor, there would be no infringement. These coils are nearer the center of the room than the sides, and are 19 inches distant from the sides. Clearly this drying-room of the defendant is not "provided with heating-coils on the sides only," and "the central portion of said room beneath the conveyer" is not "devoid of heating-coils."

Do these heating-coils in the central part of the room perform any substantial function? It seems to me very clear that they do. It may be that the currents of heated air rising from them (they are only about 9 inches in height) are so counteracted by the heated air rising from the coils on the sides of the room, and then driven downward by the fan, that the articles of clothing on the carrier are not seriously disturbed. It may be that a drying-room with heating-coils on the sides of the room and also in the central part of the room is better than complainant's, and it may be that it is not as efficient. This is not the question. Is such a room within the plainly limited terms of the claims of the patent in suit? is the real question.

It seems to me that the operation of the two rooms, complainant's constructed according to the patent and defendant's constructed as described, must be quite different. That is, the currents of hot air must move differently, and there must be a difference in the action of these currents on the wet clothing. Not that the air is not in motion in both rooms. It must be. Not that the clothing attached to the carrier is not carried on the same route through the room in both devices; but the currents of air must move differently in defendant's structure than in complainant's. The downward drive caused by the fan is not obstructed at all in complainant's room. It must be in defendant's, as the up current from the two centrally located coils meets the down current caused by the overhead fan.

The experts differ as to the operation of the defendant's drying-room, and I am not surprised that they do. Drying-rooms were not new when the complainant's patent was issued. Overhead fans for driving the hot air downward in the central part of the room were not new. Heating-coils on the side or sides of the room were not new, and heating-coils on the floor were not new. The art was somewhat crowded. At least eight prior patents in the art are before me; and in view of these, and the limitations of the patent itself, I am constrained to hold that the defendant's structure, having the coils on the floor, as described, and also on the sides, does not infringe. In 161 Fed. at page 563, this court cited Walker on Patents (4th Ed.) § 347, for the general rule applicable in such a case as this. The improvement of Barnes over the prior art resided in placing efficient heating-coils on the sides of the room *only* or in having the central part of the room under the conveyer "devoid" of heating-coils. Of course the defendant would infringe, should he place some minor heating-coils on the floor in the central part of the room, which add nothing substantial to the heat of the room, and have no substantial effect on the currents of air and their application to the articles to be dried. This

would be a mere evasion of the letter of the patent, which does not avoid infringement. But this court can neither rewrite the claims as finally written and allowed, nor disregard the limitations placed in the claims by the Patent Office, or, rather, by the claimant as a condition of its issue. Much that was said by the Circuit Court of Appeals in Universal Brush Co. v. Sonn, 154 Fed. 665, 83 C. C. A. 422, is applicable here.

In view of the fact that the claims read as they do as to the location of the coils and the absence of heating-coils from the central part of the room, the burden was heavily on the complainant to show the dry-room (aside from the Preuss drying-room) made and sold by defendant and in use at the Sanitary Laundry, and others of the same construction, was an infringement of complainant's patent. I do not think complainant has sustained the burden.

After complainant had closed its prima facie case, it asked to open its proofs and offer evidence as to the Preuss dry-room, one of which, concededly, had been made and sold by the defendant. To avoid taking proof on that subject, and for other purposes, I assume, the following stipulation was duly entered into, viz:

"It is hereby stipulated and agreed by and between the counsel for the respective parties:

"I. That this suit was brought March 5, 1908, by the complainant, for the infringement of claims 1, 2, 3, 4, 5, and 6 of letters patent No. 684,776, dated October 22, 1901, to William M. Barnes, for improvement in clothes driers.

"II. That the defendant manufactured and sold to the Sanitary Steam Laundry Company, of New York City, doing business at 152 West 127th street, New York City, a tandem collar and cuff conveyer dry-room. Said dry-room containing stands of steam-heating coils arranged on the floor in the center of the room beneath the conveyers.

"III. That complainant's prima facie proofs, which were closed September 3, 1908, related entirely to the construction and operation of the dry-room at the Sanitary Laundry.

"IV. That testimony on behalf of the defendant was taken in April, 1910, and February, 1911, and defendant's case was closed on the 28th day of February, 1911.

"V. That on October 2, 1911, complainant brought a motion to reopen its prima facie case and take testimony regarding a dry-room made by the defendant herein and sold June 6, 1906, to Max Preuss, of No. 1152 St. Nicholas avenue, New York City, which dry-room was in all essential respects the same as the one described in the Barnes patent in suit and covered by the first six claims thereof.

"VI. That defendant concedes the validity of said claims 1 to 6, inclusive, of the Barnes patent in suit, and that said drying-room sold to the said Max Preuss, and illustrated in the drawings hereto annexed marked 'Complainant's Exhibit, Drawings Preuss Dry-Room,' constitutes an infringement of the said claims of said letters patent.

"VII. That defendant alleges that none of the present management of the defendant corporation knew of the existence of said dry-room until the service of the notice of motion above referred to. That immediately upon notice of said motion defendant's manager called at said Preuss' Laundry, No. 1152 St. Nicholas avenue, New York City, and purchased said dry-room, and had it shipped to defendant's factory in Troy, New York, for the purpose of withdrawing it from the market and stopping any further infringement of said patent by the use or operation of said dry-room.

"VIII. That defendant concedes the infringement of said patent by said dry-room, and stipulates to pay complainant all damages and profits resulting from such infringement, and, if the amount of such payment cannot be

mutually agreed upon between said parties, defendant further stipulates and consents that a master may be appointed to take proofs and an accounting of such damages and profits in the usual course as provided by law for the infringement of patents, and defendant further stipulates that, if any other dry-room be found which has, at any time since the issue of said patent, been sold by defendant having heating-coils on the sides of the room only with the center of the room devoid of heating-coils, similar to the said Preuss dry-room, to pay for such infringement or consent to an accounting in the same manner as above stated.

"IX. And it is further understood and agreed that the defendant makes the above stipulation for the purpose of avoiding the necessity of opening the complainant's prima facie case and taking proof in regard to the said Preuss dry-room, and of avoiding the grant of an injunction pendente lite in respect to said Preuss dry-room, for others similar to it, and stipulates that the whole matter of said dry-room may be taken into consideration by the court on the final hearing herein, the same as if formal proof was taken in reference thereto."

It thus appears that when this suit was commenced defendant had infringed by the making and selling of the Max Preuss drying-room, and it does not clearly appear that no others like it had been made or sold. The suit was justified, and an accounting is, of course, necessary. I am inclined to the opinion there should be a decree for an injunction as against the drying-rooms like those of the Max Preuss construction. The stipulation does not provide that there is not to be a permanent injunction, and I will not infer that such was the intent of the parties. However, all the evidence has been taken as to infringement by making and selling the drying-rooms having one-third of the heating-coils in the central part of the room under the conveyer. I do not think defendant should pay any part of this expense, and still it is very difficult, if not impossible, to justly apportion the costs. I think substantial justice will be done by giving the complainant a decree for an injunction as to the Preuss dry-rooms, and an accounting as to that and like rooms, if any, and providing or decreeing that defendant has not infringed by making, selling, or using the so-called Sanitary Steam Laundry Company dry-rooms, and that dry-rooms of that construction do not infringe and giving complainant one-half costs. The bill cannot be dismissed, as the defendant made and sold at least one dry-room that did infringe the claims in issue of the patent in suit, and has so stipulated, and there must be an accounting, unless the parties agree on damages, etc. This has not been done.

There will be a decree accordingly.