BOSSERT ELECTRIC CONST. CO. v. PRATT CHUCK CO.

SAME v. SPRAGUE ELECTRIC CO.

(Circuit Court of Appeals, Second Circuit. May 23, 1910.)

Nos. 237, 238.

1. PATENTS (§ 157*)—RULES OF CONSTRUCTION—CONSTRUCTION TO GIVE VALIDITY AND EFFECT TO GRANT.

Patents granted under the laws of the United States pursuant to Const. art. 1, § 8, are grants made in consideration of discoveries which "promote the progress of science and useful arts," and are to be construed liberally so as to effect their real intent.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 230, 231; Dec. Dig. § 157.*

For other definitions, see Words and Phrases, vol. 6, pp. 5228–5231; vol. 8, p. 7748.]

2. PATENTS (§§ 27, 328*)—INVENTION AND INFRINGEMENT—ELECTRIC WALL BOXES.

The Bossert patent, No. 571,297, is for an improvement in electric wall boxes which are constructed with holes already made in the bottom and sides so as to accommodate the entrance of the conduits at any desired point; the holes being closed, however, in such manner that the workmen wiring the house can open such as are required without special tools, leaving the rest of the box imperforate. This had previously been done in various ways, as by partially cutting out the holes, leaving uncut connections, by weakening the part so it could be knocked out, or by covering the holes with stiff paper or fitting them with stoppers. The improvement of the patent consisted in cutting the holes with an ordinary punching die and forcing the cut out portion back as a plug, where it is held by frictional contact, but may be readily punched out. *Held* that, although the punching process had been used for various other purposes, it had never before been applied to such boxes, and that, in view of the superior results attained by such construction, the improvement involved invention. Claim 5 also construed, and *held* infringed.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 31, 32; Dec. Dig. § 27.*]

3. PATENTS (§ 328*)—INFRINGEMENT—ELECTRIC WALL BOXES.

The Bossert patent, No. 682,233, for improvement in outlet boxes for interior conduits, construed narrowly, and *held* not infringed.

Appeals from the Circuit Court of the United States for the Southern District of New York.

Suits in equity by the Bossert Electric Construction Company against the Pratt Chuck Company and the Sprague Electric Company, respectively. Decrees for defendants, and complainant appeals. Reversed.

J. Edgar Bull, for appellant.

Edmund Wetmore (Richard R. Martin, of counsel), for appellee Pratt Chuck Company.

S. O. Edmonds, for appellee Sprague Company.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

PER CURIAM. This is an appeal from a decree dismissing the bill upon two patents to William F. Bossert, viz., No. 571,297, November 10, 1896, for a new and useful improvement in electric wall boxes, and No. 682,233, September 10, 1901, for improvement in outlet boxes for interior conduits upon the ground of noninfringement. The requirements of the trade of wiring interiors for electrical purposes brought about the use of wall outlet boxes. The wires are carried in tubes or conduits in the walls of the house, and where they issue for the purpose of distribution to different rooms the ends of the conduits are inclosed in a box. The boxes are constructed with holes already made in the sides and bottom so as to accommodate the entrance of the conduits at any desired point; but the holes are covered so that the ordinary workman while on the job can without the use of any special tools open such holes as he desires to use, leaving the rest of the box imperforate. These boxes were known as "universal knockout boxes," and various forms were gradually developed. In 1889 the predecessor of the defendant, the Sprague Electric Company, installed in the house of William Rockefeller, at Tarrytown, N. Y., a box made of thin galvanized iron in which holes had been punched and then filled by reinserting the part punched out and keeping it in place by tacks of solder. In 1890 a box was put in the Dunshee apartment house of thin brass out of which disks had been partially cut and were held in place by two uncut connections with the wall of the box. Other boxes, as in the case of the Mezger patent, No. 564,527, were made of iron cast thinner at points where holes could be opened by breaking the wall or with holes closed by plugs like the ordinary stovepipe hole cover which could be drawn out; or holes covered by sheets of stiff paper or thin metal which could be easily broken through at desired points. Others had holes filled by ordinary plugs of cork or rubber which could be pulled out or caps which could be unscrewed.

Bossert's invention, if any, consists in his applying in 1896 to the well-known universal knockout box the old punching process. That is to say, he made a box of ductile metal of sufficient thickness, and then, by the use of dies, punched out disks where holes were wanted and drove the disks back into their original places. This made an integral box in which orifices could be opened by driving out the disks. The punching process has never been applied to a universal knockout box, and during the seven or more years in which the trade was making these boxes no one thought of making them in this way until Bossert did. The judge of the Circuit Court has found that in this way Bossert produced a box so superior in all respects as to displace all others.

The first question is whether the improvement is the result of mere mechanical skill or involves the higher quality of invention. This question might be answered differently by persons of equal intelligence, but we think the judge of the Circuit Court rightly held that invention was involved. The general subject is discussed in decisions very familiar to the profession. Western Electric Co. v. La Rue, 139 U. S. 601, 11 Sup. Ct. 670, 35 L. Ed. 294; Potts v.

Creager, 155 U. S. 597, 15 Sup. Ct. 194, 39 L. Ed. 275; Hobbs v. Beach, 180 U. S. 383, 389, 393, 21 Sup. Ct. 409, 45 L. Ed. 586; and our own decision, O'Rourke Engineering Co. v. McMullen, 160 Fed. 936, 88 C. C. A. 115.

We do not think the Rockefeller box or the Dunshee box or the patents cited like the Bartlett patent, No. 100,234, for the lid of a powder box, or the McGill patent, No. 160,834, for an oyster can, or the Britain patent, No. 106,911, for a can cover, illustrate in any way the plugs held in place by wedging. The Holz patent, No. 412,- 618, for punching wads, is an instance of wedging in a nonanalogous art.

We are next to inquire whether the defendants infringe. The claims relied on are for an article of manufacture as follows:

In the first patent:

"5. The combination with a wall box having openings adapted to receive electric conduits, of plug plates wedging in the openings and adapted to be displaced or removed to clear the opening for the conduit by being forced inwardly or outwardly, substantially as set forth.

"6. A wall box drawn out of the sheet metal having numerous openings formed by punching and adapted to receive electric conduits, plug plates therefor wedging in the openings and conforming to the exterior and interior surfaces of the walls in which the opening is formed and capable of being removed by forcing the plug plates outwardly or inwardly, substantially as set forth."

In the second patent:

"2. A metal outlet box, having one or more partially-formed openings in its walls, each opening being circular in configuration, the peripheries of the openings and of their partly-expelled blanks being mutually indented, as set forth."

The judge of the Circuit Court was of opinion that inventors should be held strictly to the wording of their claims because patents are monopolies given out of the sovereign's generosity and given ex parte. We, however, think that patents are grants made in consideration of discoveries which "promote the progress of science and useful arts" (Const. art. 1, § 8), and that they are to be construed liberally so as to effect their real intent. Grant v. Raymond, 6 Pet. 240, 8 L. Ed. 376; Blanchard v. Sprague, 3 Sumn. 535, Fed. Cas. No. 1,517. Still it is the settled rule that inventors be held to the form of claim which they have accepted under objections from the Patent Office.

The elements of claim 5 are:

(1) A wall box with openings.

(2) Plug plates for such openings.

These plug plates must be such as will wedge in the openings and can be displaced by being forced in or out of such opening. The specifications state that the same piece which is punched out to form the hole is driven or forced back therein. The crux of the patentee's invention seems to be that by punching out a disk of metal and thereafter plugging it back into the hole thus formed the metal at the cut edges will be in such condition as to wedge the plug in the hole. As the punching tool completed its operation, its cutting edge was between the periphery of the cut out portion and the plate from which it

was cut. · Manifestly at that time the diameter of the hole exceeded the diameter of the plug by twice the thickness of the cutting edge. It might be expected that if the cut out part were replaced in the hole it would fall out again, being of smaller diameter; but for some reason, which was not made entirely plain upon the argument, and which the record seems not to disclose, the plug if punched back in place will wedge so tight in the hole as to require quite a heavy blow to dislodge it. Each plug is of the same thickness as the metal in which the hole has been punched, and if it is forced back into its original position its interior and exterior surfaces will conform to the interior and exterior surfaces of the wall in which it is placed. This limitation is found in the sixth claim, but there is no such limitation specified in the fifth claim. Nothing in the specifications or in the record indicates that the plugs will not "wedge in" unless they are driven home; indeed, some of the exhibits indicate that they will wedge even when forced back halfway. We do not find that the prior art is such as to require such a limitation to be read into the claim in order to sustain it.

Defendants contend that the file wrapper and contents require such a construction. The original application contained four claims, of which 2, 3, and 4 were allowed and retained the same numbers when issued. Claim 1 read: .

"The herein described wall box, having numerous plugged conduit openings, substantially as set forth."

This was rejected on two patents to Mezger. Thereupon this first claim was amended by adding various limitations, including coincidence of the surfaces of plugs and wall. The applicant also submitted a new claim No. 5, as follows:

"The combination with a wall box having openings adapted to receive electric conduits, of plug plates wedging in the openings and adapted to be displaced or removed to clear the opening for the conduit by being forced into the box, substantially as described."

The amended first claim and the new fifth claim were again rejected on Mezger. Applicant amended the fifth claim by stating that the opening could be cleared "by (the plug) being forced inwardly or outwardly." He also submitted a new claim 6, in the language in which it now stands, and resubmitted the first claim without further amendment. He also submitted a letter stating inter alia: .

"The fact that it is an obvious advantage to have the conduit openings closed by devices which can with equal facility, as circumstances may require or permit, be removed to the exterior or the interior and an advantage to have no external or internal projections at the plug openings taken in consideration with the results of the efforts of others in this line, as evidenced by the references, seems to quite effectively negative the holding of the examiner that there is no patentable novelty involved in providing a plug plate instead of a cover."

Thereupon the patent with six claims was allowed. Defendant contends that because of this letter it must be held that the applicant acquiesced in a ruling that he was not entitled to a patent unless his claims were restricted to plugs whose surfaces were coincident with the wall surfaces, although claim 5 as issued contains nothing which imports such a limitation. This proposition seems to carry the doctrine

of acquiescence far beyond any limits it has yet reached. The appli-
cant was addressing himself to the references cited against him, viz.,
the two Mezger patents, Nos. 564,527 and 564,443. The earlier of
these showed many forms of box. These are well illustrated in one of
defendant's exhibits:

FORMS OF "WEAKENED PORTIONS"
DESCRIBED AND ILLUSTRATED IN MEZGER PATENT.

A    B    C    D

b    b    b    b

(FIGS. 1, 2 ∀ 3.)    (FIGS. 7 ∀ 8.)    (FIGS. 4, 5 ∀ 6.)    (FIGS. 11 ∀ 12.)

("WEAKENED PORTIONS" INDICATED AT "b")

In forms A and B there is an incipient hole made integral with the
walls of the box, but thinner than said walls, so that it can be broken
out with a hammer. There is no hole and no plug, and it is inconceiv-
able that the examiner or the applicant were concerned with any ques-
tion of differentiation from these forms of Mezger. In C the box is
made with all the holes completely formed and is then completely cov-
ered, holes and all, with a thin sheet of metal through which holes are
to be cut with an appropriate instrument. Here there is a hole but no
plug. In D there is a hole, and it is closed by the insertion in it of the
flange of a cover like the cover of a stovepipe hole. It is called the
"stovepipe" device in the testimony and briefs. The second Mezger
patent shows a different device for keeping the cover in place.

There are circular openings cut in the wall, and the specifications
say:

"Covering each of these circular openings is a plate, 13, such plate being
circular and larger than the openings, 8, so as to engage the sections 5 and 6
at their outer sides to effectively close the openings."

These plates 13 manifestly project beyond the outside of the opening, as does the part x of b in form D, ante.

"Formed in each plate, 13, are two parallel cuts producing a loop, 14, such loops respectively receiving the arms, 9, and thereby holding the plates, 13, in position. The arms, 9, being very much weaker than the material forming the sections 5 and 6, it will be seen that upon the application of a sharp blow to the arms they will be broken away carrying with them the attached plate."

Being confronted with these earlier devices for covering holes, the applicant insisted that his "plug-plate" device was nevertheless patentable, and he differentiated it from the Mezger covers, in very plain and simple language, by showing that his plug could be driven out or in, while the Mezger cover was adapted to be driven in one direction only, and that his "plug plates wedging in the openings" have not the external or internal projections at the openings which are found in x, y, and 9 of Mezger drawings, ante. It is not surprising that this satisfied the examiner that Mezger did not disclose any anticipation of claim 5 as it was amended, so as to confine it to a plug which could be driven in or out, and we find in the transaction no acquiescence in any construction which would restrict the combination of that claim to plug plates who surfaces are coincident with the walls.

Defendants refer to a letter of Bossert to his counsel written nearly five years after the issuance of his first patent, in which he expresses the opinion that the sixth claim of that patent is practically the only one which protects him. We are of the opinion that patents may be more safely construed by studying their language in connection with the prior art than by referring to the subsequent dissertations of the patentees. In this letter the patentee states that at the time the patent was granted the plug was set back in the press:

"Which would conform to that part of the claim which states that the plug plates conform to the exterior and interior surface of the walls."

Presumably the "claim" thus referred to is the "last claim" (the sixth claim), which the writer mentioned in the next preceding sentence, and which does contain the limitation of conformity of surfaces. But it is not material that at the time the patent was applied for the patentee was in the habit of driving the plugs entirely back. If the wedging in would be accomplished by driving them partly back, and neither the claim nor the prior art confines him to the precise method he used when he made application, both methods of driving or forcing back—wholly or partly—will be covered by the patent. The patentee in this letter also states to his counsel that he is then (five years after issue) making boxes, in which the "plugs are not flush with the wall," of which he says:

"This method would not practically conform to the exact wording of the patent."

This statement of his might fairly be held to apply only to the sixth claim, which was the one he was discussing, and which he considered was practically the only one which protected him. Applied to that claim, the statement in the letter is strictly accurate. If it be held, however, that the writer's expressions applied to the whole patent, then

they merely state his construction of the fifth claim of the patent five years after its issue, and we are satisfied that our own construction of that claim is the more accurate.

It appears that, although defendants' plugs may be knocked out in either direction, they may be driven one way with a single blow of the hammer, while it requires several blows to drive them the other way. It is argued that for this reason they do not infringe, because in the patentee's letter to the Patent Office quoted supra he stated that the plugs might be removed either way with equal facility. No such limitation is found in the claim, nor is there anything in the Mezger references (which he was then discussing) nor in the prior art which requires such limitation. The mere statement in the letter implies no more than that the plugs may be knocked either in or out without breaking the box or disorganizing the device, whichever way is selected.

The defendants' plugs are not flush with the walls, but they are punched out of the metal and then forced back. A small tongue or ear integral with the wall remains when a plug is punched, but the plug is thereafter forced back into place and is there retained by wedging in the opening, although the ear contributes in some slight degree to keep it there. Infringement of the fifth claim of the first patent is proved.

The second patent, if valid, must be so narrowly construed that the defendants cannot be held to infringe.

Decree reversed, without costs.