SAFETY CAR HEATING & LIGHTING CO. v. GOULD COUPLER CO.

(District Court, N. D. New York. March 6, 1916.)

1. PATENTS ☞167(1)—CONSTRUCTION OF CLAIMS.

The claims of a patent are limited by the language used, and, while they may be construed in the light of the drawings and specification, they cannot be broadened to include all matter contained or stated therein.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 243; Dec. Dig. ☞167(1).]

2. PATENTS ☞303, 328—SUIT FOR INFRINGEMENT—PRELIMINARY INJUNCTION.

A preliminary injunction against infringement of the Creveling patent, No. 747,686, for a system of electrical regulation for use in car lighting, denied on the ground that the question of infringement could not be determined on affidavits.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 496–498, 502, 503; Dec. Dig. ☞303.]

3. PATENTS ☞226—"INFRINGEMENT."

To constitute "infringement" of a patent claim, it is essential that there be present in the infringing device or combination every element of such claim or its equivalent, so combined as to produce substantially the same result operating in substantially the same way.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 357; Dec. Dig. ☞226.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Equity. Suit by the Safety Car Heating & Lighting Company against the Gould Coupler Company. On motion for preliminary injunction. Denied.

Duell, Warfield & Duell, of New York City, for complainant.

Kenyon & Kenyon, Wm. H. Kenyon, Richard Eyre, and Gorham Crosby, all of New York City, for defendant.

RAY, District Judge. Claims 1 to 8, inclusive, of the Creveling patent, No. 747,686, dated December 2, 1903, and issued on application filed February 12, 1902, are alleged to be infringed by the defendant. The patent relates to and embodies a "system of electrical regulation." These claims have been the subject of litigation and adjudication in the federal courts in this, the Second circuit, by Judge Hazel (Safety Car Heating & Lighting Co. v. U. S. Light & Heating Co. [D. C.] 222 Fed. 310), and by the Circuit Court of Appeals (223 Fed. 1023, 138 C. C. A. 651), affirming Judge Hazel. The adjudication in that case is binding and conclusive on this court on this motion, but this is a different defendant, and it contends that the "Simplex" system of this defendant "is so very different from either of the systems of the complainant company that an entirely new question of infringement is presented, which would not merely call for a broader construction of the patent in suit than that previously given it, but one that would be inconsistent with that previously given" should infringement be found in the use by defendant of such system.

The defendant alleges as defenses (1) estoppel and laches, (2) noninfringement, and (3) invalidity, claiming that new prior art not considered in the prior litigation anticipates each and every of the claims sued upon. The defendant claims that it does not infringe, inasmuch as it does not employ "a regulator adapted to maintain a constant current from a generator driven at variable speed and an interdependent regulator for determining the current which the regulator shall hold constant." This is a quotation from the patent wherein is stated what the patent "broadly considered" embodies.

The eight claims in issue read as follows:

"1. In a system of electrical distribution, the combination with a generator adapted to be driven at variable speeds and a storage battery charged thereby of a regulator adapted to maintain given charging currents throughout changes in speed of the generator and means operated by changes in the difference of potential of the battery determining the said charging currents.

"2. In a system of electrical distribution, the combination of a generator and accumulator and automatic means including a device operated by difference of potential determining the charging rate with means maintaining the said charging rate throughout changes in speed of the generator until a change of voltage of the battery causes a change in the charging rate.

"3. In a system of electrical distribution, the combination of a generator, automatic means for maintaining the output of the generator practically constant throughout changes in speed and electromagnetic means determining the said output to be maintained.

"4. In a system of electrical distribution, the combination of a generator, an accumulator, automatic means for maintaining the current output of the generator practically constant and automatic means determining the said current to be maintained.

"5. In a system of electrical distribution, the combination of a generator, an accumulator charged thereby, means for maintaining the current output of the

230 F.—54

generator practically constant throughout changes in speed and automatic means controlled by voltage of the accumulator for altering the current upon changes in voltage of said accumulator.

"6. In a system of electrical distribution, the combination of a generator, an accumulator, means for maintaining a desired current output of the generator and automatic means, dependent upon the voltage of the accumulator, determining the said output.

"7. In a system of electrical distribution, the combination of a generator, an accumulator charged thereby, a regulating device in circuit with the generator for controlling the current output of the generator, and automatic means governed by the voltage for determining the said current output.

"8. In a system of electrical distribution, the combination of a generator, an accumulator, a regulating device for regulating the output of the generator and supplemental means controlling the regulating device, to determine the said output."

[1] In construing the claims of a patent, we are confined to the language of the claims made, enlightened as to their scope and meaning by the drawings and specifications. It is not infrequent that the drawings show things not claimed, or that the specifications describe matters not within the claims made. Claims may be construed in the light of the drawings and specifications, but cannot be broadened to include all matters contained or stated therein. This would be substituting the specifications for the claims as made. The defendant contends that each claim in issue calls for the two elements specified in the language quoted, and that this combination of these two elements is not found in either form of defendant's system and structure, etc., alleged to infringe. The defendant claims that it has a current regulator which sometimes acts and a voltage regulator which sometimes acts, but that neither ever determines the standard of current or voltage that the other shall maintain; that each when active effects the entire regulation. The defendant also contends that, as to one form of defendant's "Simplex System" (called by Hammer "Defendant's System No. 1"), it does not infringe for the reason that it has no regulator adapted at any time "to maintain a constant current from a generator driven at variable speed"; that its only current regulator is one that maintains constancy of battery current and permits the generator current to vary with every change of lamp load.

The elements of claim 1 are, in a system of electrical distribution, the combination of (1) a generator adapted to be driven at variable speeds (as a generator attached to the axle of a car) with (2) a storage battery charged by the said generator, (3) a regulator adapted to maintain given charging currents throughout changes in speed of the said generator, and (4) means operated by changes in the difference of potential of the battery determining the said charging currents.

The elements of claim 3 are, in a system of electrical distribution, the combination of (1) a generator, (2) automatic means for maintaining the output of the generator practically constant throughout changes in speed, and (3) electromagnetic means determining the said output to be maintained.

The elements of claim 8 are, in a system of electrical distribution, the combination of (1) a generator, (2) an accumulator, (3) a regulating device for regulating the output of the generator, and (4) supple-

mental means controlling the regulating device to determine the said output.

In claim 8 I fail to find any reference to a regulator or regulating device adapted to maintain a constant current from the generator driven at variable speed, or to an interdependent regulator for determining the current which the regulator shall hold constant. In claim 8 we have "a regulating device for regulating the output of the generator," and also supplemental means for controlling this regulating device and thereby determining the output of the generator. Nothing is said about "maintaining a constant current" from the generator or any interdependent regulator which is to determine the current which the regulator "shall hold constant."

Claim 5 demands, in a system of electrical distribution, the combination of (1) a generator and (2) an accumulator charged thereby, (3) means for maintaining the current output of the generator practically constant throughout changes in speed, and (4) automatic means, controlled by voltage of the accumulator, for altering the current upon changes in voltage of said accumulator. Of claim 5, Judge Hazel says it is "typical of the other claims."

[3] To "infringe" a claim of a patent, it is essential that there be present in the infringing device or combination every element of such claim, or its equivalent, so combined as to produce substantially the same result operating in substantially the same way. The defendant insists that the invention that Creveling discloses, and that each claim of the patent in one form of language or another demands, is one which embodies the combination of two instrumentalities, (1) a regulator operated by the current output of the generator to maintain the generator output constant at all times in spite of variation of speed, and (2) a voltage device influenced by the state of charge of the battery and acting upon said current regulator to adjust it so as to determine the generator current that the regulator shall maintain during the changes of speed. The contention is that thereby Creveling at all times, whatever the condition of the battery, maintained in use a current regulator and always obtained the various well-recognized advantages of such current regulator, at the same time avoiding the danger of overcharging the battery, and that he was also enabled to use a generator of relatively small capacity and to operate that generator always at its point of greatest efficiency.

The contention seems to be that in defendant's system these instrumentalities do not exist or operate in combination, as defendant has in effect two regulators, a current regulator which acts alone when it acts at all, and also a voltage regulator which acts alone when it acts at all; that the one does not regulate while the other is regulating, that is, the two do not act together to produce a result, and neither regulator ever determines the standard for which the other shall regulate. But the purpose of the combination of elements of the Creveling patent and the combination of elements in defendant's devices seem to be designed to effect the same general results, and it is not necessary that they operate in precisely the same way, but only in substantially the same way, and identity of form is not necessary to make one ele-

ment in a patent the equivalent of an element in some other structure, nor is identity of form in the whole structure necessary to make the one the equivalent of the other. If in defendant's structure we find all the elements of the Creveling patent, or their allowable equivalents, and to accomplish a given result all the elements of the complainant's structure act all the time, and in the defendant's these elements are so arranged and changed that they may and do operate singly, that is, the one operates while the other is inactive and then the inactive one operates while the other, previously active, rests, and it be a fact that the constant and efficient action of all the elements at the same time and all the time in the complainant's device is nonessential, is infringement avoided? I think not, for if in a given device there be two wheels, and both move at the same time and all the time, but the movement of but one succeeding the movement of the other is all that is necessary to effective operation and result, is infringement avoided by so changing the form and arrangement that the one wheel absolutely rests and is at a standstill when the other moves; constant action or movement of both all the time being nonessential to the claim? I am of the opinion that the two coils of defendant's simplex regulator do interact and do influence each other. It seems to me plain that both are at all times energized, and that both are at times sufficiently energized so that the plungers of both are mobile and acting upon the shunt field carbon rheostat. The series coil is at all times on hand and available to resume its active participation in the control whenever the storage battery charge becomes depleted and a longer charging current is feasible or proper. Neither of the coils referred to can be omitted. There is not independence of action. They do cooperate sometimes simultaneously and sometimes successively. This means that both are necessary, that both operate, and that sometimes both necessarily operate together and that sometimes they act successively. The one, at times at least, influences the operation of the other, and this action is essential.

Judge Hazel held, and the Circuit Court of Appeals confirmed him in holding, that the patent in suit is entitled to at least a reasonably broad construction, and that both defendant's "stop charge" system (Hammer sketch E) and defendant's "taper charge" system (Hammer sketch F) infringe. Here the defendant uses a taper charge arrangement of substantially similar effect. The current coil first regulates and then its standard of operation is changed by the voltage coil in connection with other parts with which it is associated.

I am inclined to the opinion that defendant's structures alleged to infringe are within the claims of the patent in suit and infringe, there being substantial identity of parts, mode of operation, and results.

The defendant insists that Hammer, complainant's expert, misconceives the position of defendant as to infringement. It thus states its position:

"The position of the defendant is that Creveling disclosed and claimed a system whose essential feature was the continued use of a constant current regulator to counteract the effects of speed changes at all times whatever the state of charge of the battery, and that he devised a system having this essential characteristic because he desired to avoid the necessity of using a voltage regu-

lator to counteract speed changes at any time, the advantage that he obtained springing from the fact that the current regulator was a reliable and accurate piece of apparatus, whereas the voltage regulator was a highly inaccurate and unreliable piece of apparatus."

[2] The defendant produces very strong expert testimony with voluminous papers to the effect, if correct, that defendant does not infringe, and the court has not had the benefit of hearing or of a cross-examination of the witnesses on either side. It is venturesome, to say the least, to decide a rather close patent case on affidavits. Cross-examination may, and oftentimes does, materially change the tenor of the testimony of a witness, and this is as true of experts as of other witnesses. The art to which this patent relates is in a sense and to quite a degree new, and, in view of this and the sharp differences of opinion expressed and criticisms made, I have arrived at the conclusion that this matter ought not to be, in effect and for the time being at least, decided on affidavits. The court should have the benefit of cross-examination, if desired by either party, and of a final hearing.

The motion for a preliminary injunction is therefore denied.