## FULTON CO. v. POWERS REGULATOR CO.

(Circuit Court of Appeals, Second Circuit.   January 14, 1920.)

No. 137.

1. PATENTS ⊂⇒165—CLAIM MEASURES EXTENT OF INVENTION AND INFRINGE-
MENT.
The claim, not the patent, defines the invention, and measures the in-
fringement.

2. PATENTS ⊂⇒167(2)—CLAIM CANNOT BE ENLARGED BY SPECIFICATION.
The privilege of a patent covers only that which is both described and
claimed; the description may limit the claim, but cannot enlarge it.

3. PATENTS ⊂⇒167(2)—DRAWINGS CANNOT SUPPLY ABSENCE OF WRITTEN DE-
SCRIPTION.
While drawings may help an ambiguous description, they cannot supply
the absence of any written description of a feature of the invention.

4. PATENTS ⊂⇒157(1)—LIBERAL CONSTRUCTION TO EFFECT THEIR INTENT.
Patents are to be construed liberally to effect their real intent, which
must be ascertained from the specification and measured by the claim.

5. PATENTS ⊂⇒328—CLAIM FOR AUTOMATIC TANK HEAT REGULATOR HELD VALID
BUT NOT INFRINGED.
Claim 1 of patent 1,102,035, for an automatic tank regulator, *held* valid,
but, as construed in the light of defendant's prior machine, not infringed.

6. WORDS AND PHRASES—"TRAP."
A "trap" is a seal of water or other fluid to prevent the passage of gases
through a pipe with which it is connected.

[Ed. Note.—For other definitions, see Words and Phrases, First and
Second Series, Trap.]

7. PATENTS ⊂⇒157(2)—CLAIM TO BE CONSTRUED TO RENDER IT VALID.
A claim should be construed so as to render it valid, not so as to in-
clude a device in the prior art.

8. PATENTS ⊂⇒157(2)—CLAIM FOR "CONDUIT" CANNOT BE CONSTRUED TO MEAN
LONG-COOLED CONDUIT.
Where one element in the claim for automatic tank heat regulator was
a "conduit," which means a channel, including tube or pipe, for conveyance
of fluids, it cannot be construed to mean a long-cooled conduit, to avoid
invalidity in view of defendant's prior machine, and to show infringement
by defendant's subsequent machine in which the conduit was lengthened.

Appeal from the District Court of the United States for the Southern
District of New York.

Suit by the Fulton Company against the Powers Regulator Company
to enjoin infringement of a patent.   Decree for complainant, and de-
fendant appeals.   Reversed and remanded, with directions to dismiss
the bill.

A decree was entered in the District Court sustaining and finding infringe-
ment of claim 1 of patent 1,102,035, issued to plaintiff's assignor for an "auto-
matic tank regulator."   The only claim in suit reads thus:

"In combination, a hot water tank provided with a valve controlled heat
supply conduit, a thermosensitive bulb for containing a volatile liquid and lo-
cated in said tank, a vibratory vessel filled with liquid, a conduit opening into
said vessel and having a trap connection with said bulb, said vessel normally
tending to discharge liquid into said conduit and bulb against vapor pressure
in said bulb thereby maintaining said conduit filled with liquid, and connec-
tions between said vessel and valve for operating the latter."

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes·

The patent relates to a large class of devices in which the expansion and contraction of a substance inserted in a heated chamber or container furnishes a power used to open or close a valve or gate controlling the heat supply. This patentee points it out as general practice to use the thermosensitive material to actuate an auxiliary ("pilot valve") which in turn controls the admission of compressed air or water into another valve, which latter device regulates the heat supply. He proposes to simplify the difficulties attending this use of auxiliary apparatus by eliminating the same and "providing direct action between the thermostatic member and the valves controlling" the heat supply.

To accomplish this purpose he places in the heated container a thermosensitive bulb partly filled with a volatile fluid, e. g. chloroform. He then connects the thermosensitive bulb with an "expansible and collapsible vessel" which itself is so connected with the valve controlling the heat supply that the act of collapse or expansion opens or closes said valve.

The power of the volatile liquid, vaporizing or condensing as heat increases or decreases, must of course be conducted from the bulb to the expansible vessel, and this is done "by means of a conduit so arranged that the vapor in said bulb * * * will force liquid through the connecting conduit" into the expansible vessel, while "at the same time the vapor itself is prevented from passing from the bulb to" said vessel.

The patentee avers that his construction "retains the vapor always within the bulb and utilizes the column of liquid for transmitting the pressure of the vapor from the bulb to the expansible" vessel. Thus, he concludes, he does away with the difficulties incident to difference in temperature between the two vessels and obtains a quick response by his regulator to changes in the temperature of the thermosensitive bulb.

It is admitted that thermosensitive bodies of many kinds were old in this art of heat container regulation; and that what the patent calls an expansible vessel was, if not old in the particular form described, not new in kind, and is unimportant in this litigation. What is important is the connection or "conduit" between the thermosensitive bulb and the external heat controlling apparatus.

This connection is described as a "small flexible pipe." It is obviously flexible only from the exterior of the heated container to the entrance of the "expansible and collapsible vessel"; but it is continuous from the bottom of the thermosensitive bulb to and into the expansible vessel, and that part of the connection or conduit within the bulb is a rigid tube terminating in a hook or crook so placed that the end of the tube, conduit, or connection must always be close to one side of the thermosensitive bulb, to the end that the aperture terminating the tube will always be underneath the volatile fluid if the bulb containing the same is properly placed.

Of this the patentee says that, "One of the most important features in the construction of its regulator is the special trapping means which are provided for preventing vapor from passing from the bulb" into the collapsible vessel. For if, as the bulb heats, vapor passed out through the tube and into the colder expansible vessel, condensation and sluggish action would result—therefore he insists upon the advantage of an interchange of liquid only—not vapor; and he thus uses the trapped vapor to push the liquid through the tube, pipe or conduit.

In order to produce this result it is obviously necessary to place the thermosensitive bulb in a predetermined position, so that the crooked end of the tube shall always be under the fluid, and the function of the crook is plain, because it enables the end to be under less fluid than would be the case if (as shown by the drawings) the tube was straight and concentric with the bulb.

For several years prior to application filed for this patent, defendant (a concern long engaged in the manufacture of appliance of this general kind) had made and offered for sale its "Tank Regulator No. 8." This prior art device exhibits a bulb containing volatile liquid projecting from the heated container and rigidly connected by a tube or passageway of small diameter and said to be about an inch long, with a "collapsible and expansible vessel." There is no

trapping arrangement, no pipe, or tube within the bulb, and it is probably much easier for vapor rather than liquid to be forced by rising heat into the expansible vessel than in plaintiff's machine.

After devices manufactured under the patent in suit had become known, defendant made and sold tank regulators wherein the thermosensitive bulb was connected with the expansible vessel by a flexible tube; that tube, however, does not continue into the bulb, but the bulb itself is so placed in the heated container or tank as to be horizontal, wherefore there "will be trapping of the vapor until the bulb is half empty of its liquid." This last statement assumes that the bulb's orifice is centered.

This construction was thought to infringe, and action was brought. The court below found both validity and infringement, and from decree accordingly this appeal was taken.

Charles Neave, of Boston, Mass., for appellant.

Ralph Lane Scott, of New York City (S. T. Cameron, W. B. Kerkam, and Loyd H. Sutton, all of Washington, D. C., of counsel), for appellee.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). We are told by evidence that use has shown three marked advantages in plaintiff's patented apparatus: (1) Utilizing a flexible connection dispenses with rigid, accurate, and expensive pipe-fitting; (2) the passage of volatile fluid through a long tube external to the heated chamber cools it; and (3) a thermosensitive bulb containing a trap effectually prevents anything but liquid as distinguished from vapor pressing upon the diaphragm of the collapsible member.

It is unnecessary to say whether we accept this evidence in its entirety or not. The point is that on these facts an argument is based to the effect that, since these beneficial uses were inherent in the patented device, the claim in suit should, and indeed must, be read so as to cover any apparatus which obtains the same beneficial and useful results by substantially the same means.

[1] Strictly speaking, infringement of a patent is an erroneous phrase; what is infringed is a claim, which is the definition of invention, and it is the claim which is the cause of action.

One may appropriate many of the ideas or concepts suggested by specification and drawing, but it is the claim that measures both the patented invention and the infringement thereof. This rule obtains whether the patent be properly spoken of as great or small, primary or secondary. Walker Pat. (5th Ed.) § 186.

[2] A patentee may describe something that he does not claim or claim that which he has not described; his grant of privilege is construed to cover only that which is both described and claimed, no matter how broad the claim-language may be. Loraine, etc., Co. v. General, etc., Co., 202 Fed. 216, 120 C. C. A. 615; Lovell v. Seybold, etc., Co., 169 Fed. 288, 94 C. C. A. 578. Description may limit a claim, which must always be read in the light of the prior art (a phrase amplified in Pelton v. American, etc., Co., 239 Fed. 321, 152 C. C. A. 308); but it can never expand it (Fowler v. McCrum, etc., Co., 215 Fed. 909, 132 C. C. A. 143). So that a patent (i. e., a claim) can never be given

a construction broader than its terms in order to cover something which might have been claimed but was not. Universal, etc., Co. v. Sonn, 154 Fed. 665, 83 C. C. A. 422.

[3] The drawings may help out an ambiguous description, but never can they supply the entire absence of any written description of a feature of the invention (Windle v. Parks, 134 Fed. 381, 67 C. C. A. 363); the remark relied on by appellee from Columbia, etc., Co. v. Duerr, 184 Fed. 906, 107 C. C. A. 215, must be read in conjunction with the note at the bottom of page 907 of 184 Fed., at page 229 of 107 C. C. A.

[4] Within these limits patents are to be construed liberally "so as to effect their real intent" (Bossert, etc., Co. v. Pratt, etc., Co., 179 Fed. 387, 103 C. C. A. 45); but what their intent is must be obtained from the specification and measured by the claim, for the present "condition of the patent law * * * leaves no excuse for ambiguous language or vague descriptions" (Merrill v. Yeomans, 94 U. S. 573, 24 L. Ed. 235), although it is not legal ambiguity when "the subject-matter is incapable of exact expression in terms of measurement," and a skillful man with no measurements given can follow the directions of the patent (Eibel, etc., Co. v. Remington, etc., Co., 234 Fed. 624, 148 C. C. A. 390).

This case as put by the plaintiff is one of appropriation of ideas. That may excite sympathy, but no court can do more than discover whether there is infringement of claim.

[5] Without going over the very full prior art, we are of opinion, with the lower court, that the combination defined in the claim in suit and embodied in the device pictured and described in the specification possesses patentable novelty, because to the enumerated old elements is added "a trap connection with said bulb." The idea of using volatile liquids in bulbs communicating with valves outside the heated chamber and actuating that valve by the ebb and flow of the volatile liquid was old, and indeed it is present in defendant's No. 8 apparatus.

The functional difference between plaintiff's apparatus as described and defendant's No. 8 is the prolongation of the tube, pipe, or conduit inside the bulb with a crooked end at the bottom thereof.

That this is the "trap connection" meant by the claim in suit seems very plain. This arises from the meaning of the word "trap" as well as from a well-known legal rule of construction.

[6] A "trap" by definition is a seal of water or other fluid to prevent the passage of gases through a pipe with which it is connected. That water seals of many kinds are very old is common knowledge, and when such a phrase as "trap connection" is used in a claim founded in the specification before us, it must refer back to the novelty just described.

[7] The legal rule is this: A claim is to be construed so that it may survive rather than perish, and, if the phrase "trap connection" in this claim be used to mean any kind of positioning of a tube that will hamper or minimize the escape of gases therefrom, then the claim reads directly upon defendant's No. 8 device, which is admittedly prior art.

[8] With the claim so read as to validate it the question whether de-

fendant's present device infringes rests upon the contention that defendant's No. 8 had no conduit, and that to add to it a long-cooled conduit consisting of a flexible tube is in and of itself infringement.

The language of the claim is a "conduit opening into said" vessel, and it is obvious that such claim would be infringed (if read literally) by any conduit no matter how short or long, hot or cold, it might be. We agree with appellant that the construction contended for would read into the claim the phrase, "long-cooled conduit"; which cannot be done. The contention is also opposed to the ordinary meaning of the word "conduit."

Nowhere does the specification state that patentee's tube is to be long; doubtless it was to be as long as convenient; but that its length had anything to do with cooling is a concept neither expressed in nor suggested by the specification.

If such concept had been described and its embodiment pictured, the claim would not be bettered under McCarty v. Lehigh, etc., Co., 160 U. S. 110, 16 Sup. Ct. 240, 40 L. Ed. 358. To substantially insert the necessary words would be going further than to substitute the specification for the claim, and that certainly cannot be done. Safety, etc., Co. v. Gould, etc., Co. (D. C.) 230 Fed. 850. We are driven to the conclusion that the coolness of the connecting tube arising from its length is an afterthought. Whether it is a good one or not makes no difference; it cannot control or change claims as written. McBride v. Kingman (C. C.) 72 Fed. 913, affirmed 97 Fed. 217, 38 C. C. A. 123. Thus the case is one for applying the rule that this function now so fervently urged was not set forth in the specification, whereas another function, i. e., the trap so carefully described, was set forth and claimed; and this "is significant proof that [that] which has not been disclosed by [the patentee] to the public is not his invention." Electric, etc., Co. v. Gould, etc., Co., 158 Fed. 617, 85 C. C. A. 439.

If the meaning be sought of the word "conduit" as set forth in books of approved authority, the result is the same. That word means a channel, including a pipe or tube for the conveyance of a fluid. That which is conveyed is "conducted," a verb which has the same root as "conduit." The short tube of defendant's No. 8 machine is said to have been but an inch long, yet it conveyed or conducted fluid just as much as if it had been yards in length; the difference is in degree and not in kind. We conclude, therefore, that the claim in suit is valid when read as above indicated, but when so read is not infringed.

The decree below is reversed, and the cause remanded, with directions to dismiss the bill, with costs in both courts, for noninfringement.