SPARKS-WITHINGTON CO. v. E. A. LABORATORIES, Inc.

(Circuit Court of Appeals, Second Circuit. November 3, 1924.)

No. 86.

1. Patents ⚫⚫⚫328—1,355,283, for motor for electric horn, held void for lack of invention.

The Sparks patent, No. 1,355,283, for a motor for electric horn, claim 1, held void for lack of invention.

2. Patents ⚫⚫⚫328—1,237,717, for motor horn, held void for lack of invention.

The Sparks patent, No. 1,237,717, for a motor horn, held void for lack of invention, in that nothing new is shown therein, except the substitution of pressed metal for cast metal in the motor frame.

Appeal from the District Court of the United States for the Eastern District of New York.

Suit in equity by the Sparks-Withington Company against the E. A. Laboratories, Inc. From the decree, both parties appeal. Modified.

For opinion below, see 295 F. 534.

Cross-appeals from the District Court for the Eastern District of New York, in suit on patents 1,237,717, granted August 21, 1917, and 1,355,283, granted October 12, 1920, both to William Sparks, assignor of plaintiff. The earlier patent is for a "motor horn," and the later for an "improvement upon the construction shown" in the earlier application. The District Court sustained the single claim of the earlier patent, but found invalid the claim sued on from the second patent.

The only claim of the first patent is as follows:

"A horn comprising front and rear case sections for a diaphragm, a diaphragm having its periphery secured between said case sections and its intermediate portion free to vibrate, a wear piece on the central portion of the diaphragm, a narrow thin sheet metal strip bent in U-shape form, and having its ends secured to the rear case section to form a U-shape motor case, pole pieces rigidly secured to the opposite sides of the motor case and projecting toward each other within the case, brushes carried by and within the case, an armature having its shaft journaled in the rear wall of the U-shape case and in the rear case section, a commutator on the shaft within the U-shape case, an actuator mounted on the shaft and adapted for contact with said wear piece, and a casing inclosing the U-shape case and other motor parts."

Howard P. Denison and Eugene A. Thompson, both of Syracuse, N. Y., for plaintiff.

Frederick P. Fish, of Boston, Mass., and C. A. L. Massie, of New York City, for defendant.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] Concerning the later patent (1,355,283), it is only necessary to say that we agree with what was said about it by Campbell, District Judge, after he had found the earlier patent valid and infringed. Our views hereafter expressed as to that earlier patent render further discussion useless. There is no patentable invention in claim 1 of 1,355,283, and the decree below as to that patent is affirmed.

[2] It is useless to go into details of construction, because we think it admitted, and, if not, proven, that the "motor horn" above described is in operating theory substantially the well-known Klaxon. Further, the patentable difference between the horn of McConnell, 1,160,902, and the horn of Sparks, is that the McConnell horn contains a U-shaped motor frame of cast metal, while that of the patent in suit is of sheet metal. The argument for patentable invention was thus put in the opinion below:

"The substitution of the U-shaped metal strip for the cast metal field so far changed the art of making motor-driven horns as to

make valuable, and bring into general use that which had before, because of its inherent faults of weight and high cost, been of comparatively little value, and this in my judgment was not merely an improvement, but a real invention."

The same thought of attributing to the substitution of pressed metal for cast metal commercial consequences of extreme importance is pressed by plaintiff, who declares that the invention, "entirely eliminated from the horn structure a motor as an independent article of manufacture. The motor became essentially a part of the horn. Where the motor had formerly been an independent article of manufacture, it is now inseparable from the horn structure."

We do not think that the evidence sustains all of the claims suggested by the above quotations, but let it be assumed, for purposes of argument, that whereas, when motor horns first came on the market, they might with some looseness be described as a small power motor, independently constructed, applied to a horn, this patentee has produced and described in his patent, and covered by the claim above quoted, a compact, light, reasonably cheap, and serviceable motor horn. Yet the question necessarily remains: What is there new about this horn that reveals patentable invention over whatever may be the applicable prior art?.

We first observe that as a horn it is not new. As soon as the diaphragm is disturbed, the resulting noise is that of a Klaxon, and for the same reasons. Nor as an electrical device is it new. The motor is electrically old and functions as before. Mechanically, and confining ourselves not only to electrical motors generally, but to motors used for horn-blowing purposes, there is the novelty of using a cheaper and lighter form of pressed metal, instead of a similarly shaped cast form; but electrically and mechanically, when the various parts are assembled, the pressed metal form functions exactly as did that which was cast.

As above indicated, we find that the evidence does not sustain the somewhat extravagant claims of advantage from this substitution. But, even assuming what is claimed for the patentee's effort, this case raises no other query than this: Does invention reside in the substitution of an allied material for one that was old in the art? It has often been said that it is *possible* to find invention in the substitution of one material for another. Crawford v. Wilson (C. C. A.) 297 F. 617, citing Columbia Co. v. Halper, 220 F. 912, 136 C. C. A. 478. This is

a part of a larger truth, elaborated a generation ago in Potts v. Creager, 155 U. S. 597, 15 S. Ct. 194, 39 L. Ed. 275, viz.: That a new use *may* involve an exercise of the inventive qualities. But, added the court, "much, however must still depend upon the nature of the changes required to adapt the device to its new use." Page 608 (15 S. Ct. 199). So the question may be put thus: What exercise of the inventive faculty was required to adapt pressed metal for a use to which cast metal had long been devoted?·

It is strongly urged for plaintiff that the evidence herein shows so many of the indicia of invention dwelt upon by us in Kurtz v. Belle, etc., Co., 280 F. 277, that, remembering the proposition that invention is a question of fact, to be determined by the evidence (Kimball v. Noesting [C. C. A.] 262 F. 148), it was properly found below that invention—i.e., an exercise of the inventive faculty—was displayed by Mr. Sparks. While, as above noted, we cannot go all the way with the plaintiff as to the value or weight of the evidence adduced, we do assume for purposes of decision that commercial novelty, economy, neatness, and simplicity are all displayed to a commendable extent in the patentee's motor horn, upon which the claim of the patent in suit plainly reads.

But, with this assumption made, the legal question is not changed: Did it require an exercise of the inventive faculty, or (same thing) was it patentable invention, to substitute pressed metal for cast metal in the motor, which the prior art had long used ·to produce a noise in a horn? Approaching this question of fact, and fully recognizing that many excellences long used as indicia of invention are here presented in favor of the patent, it is just as true that general rules are always subject to particular findings. It is clear that by a practically unbroken line of authorities the courts of this circuit, sitting as triers of the fact of invention, have always refused to yield the inventors' palm to a mere substitution of material or to a new use except under circumstances of rarity.

To cite but a few, the substitution of one abrading substance for another is not invention. Archer v. Imperial Co., 207 F. ,81, 124 C. C. A. 638.[1] Neither is the substitu-

[1] The dissent' of so eminent a patent Judge as Coxe, Circuit Judge, in this well-known case of the now universally used "potato peeler" is a striking example of how an inquiry into invention may be "answered differently by persons of equal intelligence." Bossert v. Pratt, 179 F. 385, 103 C. C. A. 45.

tion of cement for other filling in the construction of dams. Ambursen v. Hydraulic Co., 211 F. 982, 128 C. C. A. 480. The same ruling was made in respect of the introduction into grand pianos of a pneumatic mechanism long used on uprights. Æolian v. Wanamaker, 234 F. 90, 148 C. C. A. 106.

The line of rulings now sufficiently adverted to is strengthened in its application to the present case by our finding, as we do, that in motors used and sold, mostly to actuate so-called electrical toys, a U-shaped sheet metal frame had been shown and commercially used under Grant patent 931,416. We are therefore of opinion that the patent at bar must fail for lack of patentable invention, in that nothing patentably new is shown therein, except the substitution of one species of manufactured metal for another.

The foregoing renders it unnecessary to consider the very interesting argument addressed to us by appellant in respect of the effect of the copendency and interferences of the patent at bar with the McConnell patent above referred to.

Let the decree appealed from be modified, so as to deny patentable invention to both the claims in suit, and the bill dismissed. Defendant, having now fully prevailed below, will recover the costs of the District Court and of this court.

