## UNITED SHOE MACHINERY CORPORATION v. E. H. FERREE CO. et al.

District Court, W. D. New York.
July 23, 1932.

Fish, Richardson & Neave, of Boston, Mass. (Hector M. Holmes and A. D. Salinger, both of Boston, Mass., of counsel), for plaintiff.

Morrison, Kennedy & Campbell, of New York City (Donald Campbell, of New York City, and Sherman L. Whipple and Edward O. Proctor, both of Boston, Mass., of counsel), for defendants.

ADLER, District Judge.

This patent [No. 1,629,870] has to do with an arm or member of a machine used in the manufacture of shoes and known as a clicking machine. The function of the machine is to cut out upper leather or fabric material of one kind or another used in the making of the shoe. Before this machine was put on the market by the plaintiff, these parts were cut out by the operator with a sharp knife following a pattern laid upon the material. With the clicker machine the parts are cut out by placing a die on the material and striking the die with the arm of the machine. The machine is large and heavy. It is necessary to strike the top of the die with a very powerful blow. It is also necessary that the arm or hammer striking the blow shall be so arranged that the material can be placed on the bed of the machine so that it can be freely moved around without obstruction. Because the dies are sometimes of considerable size, and because the hammer arm must be attached at one end only, and because the arm must strike the metal die with great force, it is necessary that the hammer arm should have the qualities of strength, rigidity, hardness, stiffness, and toughness. It is not necessary to describe in detail the working of the machine. The weight of the hammer arm, which is considerable, contributes in only a small degree to the force of the blow delivered by the arm onto the die. The machine is equipped with an eccentric and a flywheel which are designed so that they bring the hammer arm down through the inch or two, through which it moves vertically, with great force, and immediately returns the hammer arm to the position from which it started. This operation gives a clicking sound from which the machine apparently got its name.

These clicking machines were first put out by the plaintiff about the year 1908. Some time after that the defendant entered the field. When the defendant is referred to in this opinion, it is the Reece Shoe Machinery Company. From that day until this all of the clicker machines used in the shoe industry in this country have been made by the plaintiff and the defendant, a great majority of them by the plaintiff. From 1908 until 1923 the hammer arm on the machines of both plaintiff and defendant was made of cast iron. It was very heavy and on plaintiff's machine generally used in the trade it weighed two hundred sixteen pounds. It was found that there were disadvantages in the operation of the machine due to the weight of the hammer arm. The operator had to swing the arm over to one side by hand after each stroke of the hammer in order to rearrange his material and replace the die. He then had to manually bring the arm back into place so that it was suspended directly over the die. These operations were tiring on the operator and could not be performed rapidly. The plaintiff, which it must be remembered was the only manufacturer in the field for a number of years after 1908, made several efforts and procured a number of patents with a view to improving the machine in this particular. By one device it attempted to provide mechanism for moving the arm automatically, and by another device for braking the arms so that it would stop directly over the die. This was desirable because in moving the arm manually the operator had to use some considerable force to stop it at just the right place. The plaintiff found that these devices not only added considerably to the cost of the machine, but they got out of order easily and on the whole were not practicable.

This was the condition of the art when Horgan, who obtained the patent in suit, made the suggestion that the plaintiff try the

experiment of casting the hammer arm of aluminum alloy instead of cast iron. The plaintiff had on hand at one of its foundries a quantity of aluminum alloy which it had purchased from a concern known as the Baush Company, and which it had used in making small castings on others of its machines. It appears that Horgan had made this suggestion to substitute aluminum for cast iron to some of his superiors some months before the experiment was. made. They expressed themselves to the effect that they did not think it would work, but the testimony does not disclose the reasons for their skepticism. However an aluminum alloy arm was finally made and given a test, and as a result of the test more of them were cast and sent out for a thorough trial. From that time on the plaintiff made its hammer arms on these clicking machines of aluminum alloy instead of cast iron. The first lots of aluminum alloy arms which were cast in their own factory were not satisfactory because a considerable percentage of them cracked. The plaintiff then had the arms cast by the Aluminum Company of America of an aluminum alloy prepared by them. These were satisfactory and continue to be in use.

Horgan left the employ of the plaintiff a little time after the first aluminum clicker arm castings were made, but at the instance of the plaintiff he filed his application for the patent in suit August 6, 1924. The claims of the applicant were first rejected by the Patent Office, but the application was finally allowed and the patent issued May 24, 1927. In the meantime both plaintiff and defendant had been making and putting on the market in quantities clicker arms made of aluminum alloy. In 1924 the plaintiff got out the so-called two-piece arm made of aluminum reinforced with steel which is of the construction shown in the Ballard patent for which application was filed August 25, 1924, and the patent issued January 24, 1928. The two-piece clicker arm is almost entirely of aluminum alloy, and weighs one hundred six pounds, or twenty-seven pounds more than the single piece aluminum alloy arm constructed as described by the Horgan patent. When the aluminum arm had demonstrated its success, the plaintiff made no more cast-iron arms for this class of work, and, as most of its machines were on lease, ultimately replaced all cast-iron arms with aluminum arms or aluminum reinforced arms.

It is probably necessary to consider in some degree the state and condition of the aluminum alloy industry at the time of the beginning of the making of these clickers and also at the time of the alleged invention. The testimony is that, although aluminum had been in use during the entire period, castings of aluminum alloy of any size were not made prior to 1915. After that date castings were made running in weight as high as seventy-five pounds. Prior to the making of the arm of aluminum by the plaintiff it had been using aluminum on various of its machines, but in no case for any member which required the weight and strength and rigidity that were necessary for the clicker arm. In some of the uses of aluminum testified to on the trial, in which cases it superseded iron, strength and rigidity were necessary. I conclude from the evidence before me that during this period the uses of aluminum alloy were being constantly extended and that the various alloys were being experimented with with a view to fitting the material to new uses. It would appear that at about the time Horgan made the suggestion which resulted in this patent, and possibly for some little time before then, aluminum alloy was on the market of the quality necessary to make a satisfactory clicker arm. Just how long before the date of the experiment of Horgan, I am not able to determine. The fact is that at that date the plaintiff was able to procure aluminum alloy suitable for the purpose.

It is not perfectly clear from Horgan's testimony just what his reasons were for making the suggestion that aluminum be substituted for cast iron in the clicker arm. After some questioning he did say that it was in order to reduce the weight. It is also not clear from the testimony what the grounds were for the skepticism expressed by Horgan's superiors and associates when he first made the suggestion of the change to them. It is suggested that they did not believe aluminum alloy would do because they thought it was not strong enough or heavy enough or stiff enough to stand the vigorous blows it must give to the die without becoming cracked or distorted. It is also suggested in argument, and based upon the testimony of one of defendants' witnesses, that the considerably greater cost of aluminum alloy over cast iron prevented aluminum being considered for the purpose. The fact is that aluminum alloy was not tried by any one for a clicker arm until Horgan tried it, and then it proved to be successful. In this connection it must be remembered that the plaintiff was the only manufacturer in the country that made

machine clickers in any quantity. The only other concern that made them at all was the defendant, and it made comparatively few.

Here it may be well to state what the testimony shows with reference to the number of clickers in use before and after the alleged invention. Without stating numbers, which appear in the testimony, there is no reason to conclude that more clickers were put into use in the shoe industry as a result of the change to aluminum than would have been if the arm continued to be made of cast iron. Practically the whole industry was controlled by the plaintiff, and most of the plaintiff's machines were put out on lease. The machines they put out were greatly improved by the change of material, but I find that they put out few if any more of them after the alleged invention than they would have if the improvement had not been made.

The change of material made a decided improvement in the machine. Because the aluminum arm is much lighter than the cast-iron arm, it can be moved and handled by the operator more easily and consequently with much less effort than it could before. The work is not so tiring, and the testimony is that the operator is able with less effort to do more work in a day with the new arm. It appears that the increased output per day was about 10 per cent. The change in the arm made the machine easier to handle by the operator and thus increased its workable efficiency.

The Horgan patent is a simple one, and consists, broadly speaking, of the clicker arm or presser member on the clicking machine being made of aluminum alloy instead of cast iron as it had been made before. The sole question to be decided is whether this substitution of aluminum alloy for cast iron under all of the circumstances in this case is invention. I think that it is not. I shall endeavor to give my reasons for the conclusion I have reached, and make the statement of them as brief as possible.

I think it may safely be said that there is a rule established by the decisions of the Supreme Court that it is not invention to substitute one material for another in the making of one or more parts of a machine, unless such substitution of material involves a new mode of construction or develops new uses and properties in the article formed. Substitution of material has been held to constitute invention where it produces a new mode of operation, or results in a new function, or in the first particular success of the art in which the substitution is made, or in in-

creased efficiency, or in a decided saving in the cost of operation. The statement I have just made is supported by the well-known cases of Hotchkiss v. Greenwood, 52 U. S. (11 How.) 248, 13 L. Ed. 683; Hicks v. Kelsey, 85 U. S. (18 Wall.) 670, 21 L. Ed. 852; Union Paper Collar Company v. Van Deusen, 90 U. S. (23 Wall.) 530, 23 L. Ed. 128; Smith v. Goodyear Dental Vulcanite Company, 93 U. S. 486, 23 L. Ed. 952; Gardner v. Herz, 118 U. S. 180, 6 S. Ct. 1027, 30 L. Ed. 158; Brown v. District of Columbia, 130 U. S. 87, 9 S. Ct. 437, 32 L. Ed. 863; Florsheim v. Schilling, 137 U. S. 64, 11 S. Ct. 20, 34 L. Ed. 574. And see Walker on Patents, §§ 65 and 66.

In this circuit, Judge Hough, in his opinion in Sparks-Withington Company v. E. A. Laboratories, Inc. (C. C. A.) 3 F.(2d) 539, 540, states the law as I believe it to be as follows: "It is clear that by a practically unbroken line of authorities the courts of this circuit, sitting as triers of the fact of invention, have always refused to yield the inventors' palm to a mere substitution of material or to a new use except under circumstances of rarity."

The only change made in this machine by the Horgan patent was the change in the material of which the clicker arm was made. Every other part of the machine was made just as it was made before. The clicker arm itself was made as it was made before, and was operated as it was operated before. The machine did the same thing in the same way, by the same means, after the substitution was made. There was not even a difference of appearance in the structure of the machine. The only difference in the machine itself made by the substitution of the aluminum alloy for the cast iron in the clicker arm was a reduction in the weight of the arm. Invention is not permitted to rest upon such a change alone. Union Hardware Company v. Selchow (C. C.) 112 F. 1006.

I have carefully examined the facts as I have found them and as I have set them forth in this opinion to determine whether this case comes under any of the exceptions to the general rule. I agree with Judge Learned Hand when he said in his opinion in Van Heusen Products, Inc., v. Earl & Wilson (D. C.) 300 F. 922, that the law has not laid down any absolute rule on this subject. I shall therefore discuss the advantages that are claimed in the use and operation of this machine as a result of the substitution of material and what has happened in the industry since the alleged invention was made.

The change in material resulted in greater ease of operation of the clicker arm by the operator. Because it was lighter, he was able to move it and stop it with less effort. I have explained this operation in the first part of my opinion, and I have also called attention to prior efforts made by the plaintiff to accomplish this result by automatic appliances which it patented. These efforts were directed toward obtaining automatic action of the arm which, if successful, would have made the manual operation of the arm by the operator unnecessary. As these efforts were not prosecuted to the extent of making them practicable, the arm continued to be moved manually. The substitution of a lighter material, and the consequent easier handling of the arm, did make an improvement in the operation of the machine. The operator could handle it with less fatigue and with greater rapidity. The evidence is, as before set forth, that the result was an increased efficiency in the machine of about 10 per cent. It was well known that, if the arm could be made lighter, it could be handled more easily and more efficiently. It was believed that the arm could not be made lighter if made of cast iron and do the heavy work that was required of it. It was found, when tried by Horgan, that the much lighter material, aluminum alloy, was sufficiently rigid and tough to stand the strain put upon the clicker arm. In my opinion the substitution of this lighter material, its trial on the machine, and the discovery that it was a success, is not invention. The material was at hand, its quality of lightness was well known, and whether or not it had the requisite qualities of toughness and rigidity was a matter that any one could ascertain by experiment. That is all that Horgan did.

The increased efficiency of the machine as a result of the change in the material of the arm was not sufficient in amount or character to turn the scale toward spelling out invention.

It is argued that no one before Horgan believed that aluminum alloy would do the work required by the clicker arm; that, in the first place, it was believed that great weight was required for the arm; that, in the second place, it was believed that aluminum alloy would not stand the very great ramming to which the arm is constantly subjected; that therefore Horgan's selection and use of this material for that purpose was invention. I have found that the weight of the arm itself was but a small factor in the heavy blow that it struck. The reduction in the weight of the arm by the substitution of material was a little over one hundred pounds. Plaintiff's old cast-iron arm weighed two hundred and sixteen pounds, and its new reinforced aluminum arm weighs one hundred and six pounds. Every one connected with the industry knew that that small difference in weight would not affect cutting power. It appears that the cast-iron arm had been increased in weight from time to time on account of its necessary size and in order to insure rigidity. Because of the nature of the work it had to do, it was suspended at only one end. It may well be that it was generally thought that aluminum alloy would not stand the test for rigidity, hardness, stiffness, and toughness. But, whether it would or not was simply a matter of experiment, and not, it seems to me, any question of invention.

I have found that, at the time of the alleged invention by Horgan, aluminum alloy suitable for the purpose for which he used it was readily procurable. I have found further that it was procurable for an indefinite period of years prior to that date. The use of aluminum and aluminum alloy was being constantly extended, and it continues to be put to new uses. I am unable to find it to be invention to try successfully even though it was tried for the first time, the use of a metal as well known as aluminum alloy then was.

Commercial success, it does not seem to me, enters this case as a test of patentability. It has been held in this circuit that great commercial success might lead the court to sustain the patent in a doubtful case. Columbia Metal Box Company v. Halper, 220 F. 912. In this case there was commercial success, but I have found that that success was not due in any considerable degree to the change of material in the clicker arm. I do not therefore consider this as a factor in determining patentability.

Having reached the conclusion that the claims made in the Horgan patent do not amount to invention, the bill is dismissed.